Guillermina **CORTES QUINONES** and
Alberto **Almodovar Medina,**
**Plaintiffs, Appellants,**

v.

Charles **JIMENEZ NETTLESHIP,** et al.,
**Defendants, Appellees.**

No. 84–2014.

United States Court of Appeals,
First Circuit.

Argued May 9, 1985.
Decided Sept. 13, 1985.

Jose E. Fernandez-Sein, Santurce, P.R., with whom Law Offices of Nachman & Fernandez-Sein, Santurce, P.R., was on brief for appellants.

Americo Serra, Acting Sol. Gen., and Reina Colon De Rodriguez, Asst. Sol. Gen., San Juan, P.R., was on brief for appellees.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and VAN DUSEN,* Senior Circuit Judge.

PER CURIAM.

Decedent, William Arena Cortes, an inmate at the Arecibo District Jail in Puerto Rico, was killed by other inmates of the jail on January 8, 1982. The plaintiffs in the action are Guillermina Cortes Quinones, the mother of the decedent, and Alberto Almodovar Medina, her husband. Plaintiffs brought this action under 42 U.S.C. § 1983 against three defendants, each of whom is an official in the Puerto Rico prison system: Charles Jimenez Nettleship, Administrator of Corrections; Felipe Torres Torregrosa, Director of the Program of Penal Institutions of the Administration of Corrections; and Jose A. Candelaria Alonso, Superintendent of the Arecibo District Jail. Plaintiffs allege that defendants' actions and failures to act resulted in decedent's death at the hands of his fellow inmates.

Plaintiffs now appeal from the district court's grant of summary judgment to defendants. Since plaintiffs failed to file any timely opposition to defendants' motion for summary judgment, we are confronted with the rather technical question of whether defendants' moving papers were sufficient to entitle them to summary judgment.

We look to plaintiffs' complaint to determine the theory of liability set out therein

---

* Of the Third Circuit, sitting by designation.

to which defendants, as the parties moving for summary judgment, were required to respond. In material part, the complaint alleged as follows:

"26. On or before January 8, 1982 [the date decedent was killed], there was, at the penal institutions in Puerto Rico, a long history of attacks and murders by inmates upon other inmates. In most cases rival gangs were blamed for these killings. This condition got progressively worse during the year 1981 and the beginning of 1982. The general public was informed of the situation by the local press and news stations.... The Correction Administration and the defendants in particular were called upon by the news agencies and by the Senate of Puerto Rico to put an end to this situation which was characterized as a crisis.

"27. After conducting an in-depth study and investigation ..., the Senate Judiciary Committee of the Legislature of Puerto Rico found that the violence and the 'state of war' that exists within the penal institutions goes beyond the existence of rival gangs and is due to the problems that exist in the penal system such as: overcrowding, drug addiction, lack of programs for the rehabilitation, idleness, lack of medical and psychological services and lack of a competent system of classification ...

"31. On and before January 8, 1982, it was known to defendants ... that a veritable war existed between rival gangs at the penal institutions and that 'trials' were being conducted by inmates on other inmates, resulting in the executions of those inmates so 'tried'.

"32. On and before January 8, 1983, there was a chronic condition in the Arecibo District Jail, as well as in other jails in Puerto Rico, of a lack of sufficient prison guards, a condition closely related to the occurrence of attacks and murders in institutions.

"33. On and before January 8, 1982, the defendant, Jose Candelaria, superintendent of the Arecibo District Jail, knew he was physically incapable of providing the protection to the life of the inmates in the institution that he was required to provide for all these prisoners under his custody.

"34. On and before January 8, 1982, the defendants, Charles Jimenez Nettleship, Felipe Torres Torregrosa, knew of the fact that Superintendent Jose Candelaria ... did not have sufficient penal guards to maintain and provide protection to the inmates.

"35. On January 8, 1982, plaintiff's decedent ... was executed by other inmates and was cut to pieces and stuffed in a trash can at the Arecibo District Jail....

"36. On January 8, 1982, there were no penal guards providing custody in the interior of the decedent's overcrowded cell block."

Shortly before defendants filed their motion for summary judgment, this court, in *Pinto v. Nettleship*, 737 F.2d 130 (1st Cir. 1984), upheld the granting of summary judgment in favor of Victor Maldonado, a defendant jail superintendent, in another § 1983 action seeking damages for the death of a prison inmate. In *Pinto*, a pretrial detainee housed at Bayamon Regional Jail had been killed on the second day of his detention. The pertinent allegations were that "there was an extreme condition of overcrowding, lack of vigilance and protection of inmates due to lack of sufficient prison guards" and that the defendant jail superintendent had been physically incapable of protecting any inmate's life. *Id.* at 131. The jail superintendent moved for summary judgment stating he had had no personal knowledge that decedent had any special need for protection. Plaintiffs did not contest that point, but rather claimed that the extreme overcrowding and lack of vigilance and protection due to insufficient guards had resulted in decedent's death and that defendant, as superintendent, was responsible for these prison conditions. The record before us, however, indicated that defendant did not control the number of guards, could not refuse to admit inmates, and had done

what he could to obtain more guards and to alleviate the crowding. As plaintiffs offered nothing to suggest the superintendent could have done more than he had, and as a jail official in a § 1983 action cannot be held liable in damages for conditions beyond his control, we concluded that the district court had correctly granted summary judgment on the record before it.

In moving for summary judgment in the present case, defendants filed three short affidavits seeking to bring themselves within the contours of *Pinto*. Defendant Candelaria, the superintendent of the Arecibo jail where the deceased was housed, stated that he had neither been notified that decedent's life was in danger nor requested to provide special protection and, in any event, was not responsible for the jail conditions because he had been on sick leave from October 19, 1981 to January 24, 1983 and hence relieved of his duties. Defendant Torres, the Director of the Program of Penal Institutions of the Administration of Corrections, stated that he was in charge of security, that he had held his position less than five months previous to decedent's death, that he had not been notified decedent's life was in danger or that decedent needed protection, that he had no knowledge of nor control over the incidents alleged in the complaint, and that while he could recommend hiring or transfer of guards, the Administrator of Corrections might or might not adopt the recommendations. Torres did not state whether or not he had recommended more guards for Arecibo jail. Defendant Jimenez Nettleship, the Administrator of Corrections, stated that he had been the Administrator for less than six months prior to decedent's death, that he had inherited his predecessor's budget and an overcrowded prison system, that he had increased the number of guards at Arecibo Jail by five in December 1981, and that he had not been notified decedent's life had been in danger.

Relying on the *Pinto* case and noting plaintiff's failure to oppose defendants' motions for summary judgment, the district court granted defendants' motions.

Defendants contend *Pinto* controls the present case. They point out that, like the defendant in *Pinto*, the present defendants here all stated that neither decedent nor anyone else notified them that decedent's life was in danger and that plaintiffs failed timely to controvert defendants' assertions. Apparently defendants believe that knowledge of a particular threat to a particular inmate—in contrast to knowledge that prison conditions constitute a threat to inmates generally—is always a prerequisite to liability for the death of an inmate.

We did not go that far in *Pinto*, nor did we mean to foreclose the possibility that knowledge of certain aggravated conditions may be tantamont to knowledge of a "pervasive risk of harm" to inmates. *See, e.g., Withers v. Levine,* 615 F.2d 158 (4th Cir.), *cert. denied,* 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980). Rather, what was dispositive in *Pinto* was the showing that defendant had made in response to the theory of liability underlying plaintiffs' complaint. The theory of liability in *Pinto* was that overcrowding and lack of sufficient guards had resulted in decedent's death. Defendant superintendent contended these conditions were beyond his control and submitted materials in support thereof, plaintiffs failed to controvert the defendant's showing, and hence summary judgment was appropriate.

In the present case, in contrast, plaintiffs' complaint referred to more than overcrowding and insufficient guards, conditions which may be beyond one or more defendants' control. Among other things, plaintiffs complained of an inadequate system of classifying inmates, a history of attacks and murders, gang wars, and the failure to station guards in the interior of cell blocks. At least some of these problems can be inferred to be matters over which individual defendants exercise control. In substance, plaintiffs were suggesting a very serious breakdown of authority and control, perhaps bordering on anarchy. Moreover, plaintiffs' action was not limited to the superintendent but also named the person in charge of security and the Administrator of Corrections as defendants.

The question, then, is whether defendants' affidavits sufficiently responded to

the theory of liability underlying plaintiffs' complaint and demonstrated the absence of any genuine issue of material fact regarding defendants' responsibility for or control over the conditions complained of.

■ To the extent plaintiffs were complaining of decedent's death, we think the affidavit of defendant Candelaria, the jail superintendent, was sufficient to entitle him to summary judgment.[1] The affidavit indicated Candelaria was on sick leave and had not been in charge of the institution for more than two months previous to decedent's death. He was not responsible for running the prison and hence not accountable for the alleged violations.[2]

■ Defendant Torres' affidavit stated that he was in charge of Security (though he had held the position less than five months previous to decedent's death), but had no definitive control over the hiring or transfer of guards since his recommendations were subject to approval by the Administrator of Corrections, defendant Jimenez Nettleship. That he did not have the final say, however, would not necessarily absolve Torres, for liability conceivably could be predicated on Torres failure to recommend needed action. Torres did not indicate in his affidavit whether he had recommended transfer of more guards to Arecibo, whether he had endeavored to station the guards he had in the most effective manner, or what steps he had taken to deal with the gang warfare or other conditions outlined in the complaint. Rather, in an effort to negate responsibility, he perfunctorily alleged that he had "no personal knowledge nor ... control over the incidents alleged in the Complaint." This allegation was too vague to have been of much use. The complaint alleged many different incidents and events, some of much notoriety, and it defies belief that the official in charge of security would be ignorant of everything alleged in plaintiffs' complaint. Greater specificity as to which events in particular Torres was ignorant of was needed for Torres' denial to be effective.

■ The substance of the affidavit of defendant Jimenez Nettleship, the Administrator of Corrections, was that he had inherited an overcrowded prison system, that he was stuck with his predecessor's budget, that he had been on the job less than six months when decedent was killed, and that he had added five guards to Arecibo jail.

1. The allegations in plaintiffs' complaint are very wide ranging. For example, the complaint referred to decedent's kidney stones and psychiatric condition and charged decedent had been denied proper medical treatment. Whether, on the one hand, plaintiffs were contending that the denial of medical treatment was a compensable eighth amendment violation separate and independent from defendants' failure to protect decedent from other inmates or, on the other, plaintiffs included this and other allegations as background to show a complete breakdown of authority, functioning, and order within the jail is not clear. If the former and if the alleged denial of medical treatment occurred prior to Candelaria's sick leave, perhaps some viable § 1983 claim was stated against Candelaria. We do not now decide the matter because of the ambiguities in plaintiffs' complaint and the failure of the parties adequately to address it. In general, it is not entirely clear in what capacity plaintiffs were proceeding or whose constitutional rights they were asserting. Perhaps plaintiffs sought to recover on behalf of decedent's estate for wrongs done to decedent personally. *See Jaco v. Bloechle,* 739 F.2d 239 (6th Cir.1984). However, plaintiffs did not expressly present themselves as representatives of decedent's estate and did not indicate whether, under Puerto Rico law, a § 1983 claim for an unconstitutional denial of adequate medical treatment would survive decedent's death. Alternatively or additionally, perhaps plaintiffs were contending that their own constitutional rights were in some way violated by defendants' alleged failure to provide adequate protection to decedent. Compare *Bell v. City of Milwaukee,* 746 F.2d 1205, 1242–1245 (7th Cir.1984), with *Trujillo v. Board of County Commissioners,* 768 F.2d 1186 (10th Cir.1985). As plaintiffs' capacity or standing was not raised either below or on appeal, we do not pursue this matter further, but rather leave it for development on remand.

2. Even considering the voluminous materials plaintiffs filed in support of their motion for reconsideration of the grant of summary judgment to defendants, we reach the same conclusion. Pointing to defendant Candelaria's deposition, plaintiffs say Candelaria had some contact with the person taking his place and may have known something about the conditions inside Arecibo prison at or near the time decedent was killed. This is an insufficient basis for liability. There is no indication that Candelaria, while on extended sick leave, had any responsibility for the administration of Arecibo jail.

That defendants had to work within budgetary limitations does not, on the present record, necessarily indicate they were powerless to deal with the "state of war" alleged by plaintiffs and not denied by defendants. Plaintiffs faulted not only the overcrowded conditions and number of guards but also, among other things, the classification system for prisoners and the guards' positioning. Defendants' affidavits did not respond to these latter matters. Defendants' affidavits said nothing, for example, about the classification system used or what efforts they undertook to deal with gang warfare. Nor, contrary to the district court's conclusion, do we think it could properly be decided on the present record that the five or so months defendants had held their position was necessarily too short a period in which to implement corrective measures. Given the problems facing the entire Puerto Rico penal system, *see Morales Feliciano v. Carlos Romero Barcelo*, 497 F.Supp. 14 (D.P.R.1980), it may turn out that defendants did what they could within the limitations they faced. We do not foreclose that possibility. The only point we make now is that defendants' perfunctory nine or ten sentence affidavits were insufficient conclusively so to establish and hence summary judgment for defendants was not warranted on the basis of the affidavits they filed.

On remand, the district court may face unsettled or difficult questions concerning standing, causation, and the standard against which to measure prison officials' liability (or lack of liability) under the circumstances, compare *Withers v. Levine*, 615 F.2d 158, 161–162 (4th Cir.), *cert. denied*, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 59 (1980) with *Martin v. White*, 742 F.2d 469, 474 (8th Cir.1984), and clarity would be served were plaintiffs to specify more precisely the capacity in which they are suing, the alleged constitutional wrongs for which they seek redress, and the particular manner in which they feel defendants violated either their or decedent's constitutional rights.

██ In a case like this it may not be an easy matter, acting against the compli-

cated backdrop of § 1983 case law, to sort out the potential liability of individual jailers and other officials, especially where they are limited by resources, the nature of their job, and their charges. The fact, however, that prisoners to a large degree lose control over their person and the environment in which they must live has long obligated their keepers to provide protection. *See* Restatement (Second) of Torts § 320 (1965). At some point (which we do not now attempt to delineate more precisely, but leave initially to the district court) inadequate regard for the safety of prisoners will rise to the level of a constitutional violation. *See, e.g., Withers v. Levine*, 615 F.2d 158 (4th Cir.), *cert. denied*, 449 U.S. 849, 101 S.Ct. 136, 66 L.Ed.2d 259 (1980). We believe here that plaintiffs have raised sufficient unanswered questions to require this case to go forward with more complete development of the facts. *Cf. Earnhardt v. Commonwealth of Puerto Rico*, 691 F.2d 69, 73 n. 1 (1st Cir.1982) (importance of factual development when issues are novel, unsettled, or in a developing area). Whether or not when this has occurred there will be any basis for recovery will then be a matter for further determination.

*Vacated and remanded.*