**Aracelis CRISOPTIMO, et al.,**
**Plaintiffs, Appellants,**

v.

**Charles Jimenez NETTLESHIP, et al.,**
**Defendants, Appellees.**

**No. 85–1675.**

United States Court of Appeals,
First Circuit.

Argued June 3, 1986.

Decided Sept. 9, 1986.

Jose E. Fernandez-Sein with whom Law Offices of Nachman & Fernandez-Sein, Santurce, P.R., was on brief, for plaintiffs, appellants.

Vannessa Ramirez, Asst. Sol. Gen., with whom Rafael Ortiz Carrion, Sol. Gen., and Reina Colon De Rodriguez, Deputy Sol. Gen., Hato Rey, P.R., were on brief, for defendants, appellees.

Before CAMPBELL, Chief Judge, COFFIN and TORRUELLA, Circuit Judges.

COFFIN, Circuit Judge.

Decedent, Carlos Alberto Marin-Rodriquez, a pretrial detainee at the Bayamon Metropolitan Regional Institution (Bayamon) in Puerto Rico, was killed by other inmates of the jail in February 1982. The plaintiffs in this action are the decedent's father, mother, brother, and three minor daughters. They brought this action in the federal court for the District of Puerto Rico under 42 U.S.C. § 1983 against three defendants, all officials of the Puerto Rico prison system: Charles Jimenez-Nettleship, Director of the Corrections Administration at the time of the killing; Felipe Torres-Torregrosa, Director of the Program of Penal Institutions of the Administration of

Corrections at the time; and Victor Maldonado, the Superintendent (Warden) of the Bayamon Detention Center. Plaintiffs alleged that defendants' actions and failures to act resulted in decedent's death at the hands of inmates, violating the decedent's eighth amendment right to be free from cruel and unusual punishment.

The case was tried before a jury, which in November 1983, delivered a verdict awarding decedent's three daughters a total of $45,600 in compensatory damages. In April 1984, the district court set it aside as a compromise verdict, and ordered a new trial on all issues. In August 1985, relying on a June 1984 decision by this court, *see Pinto v. Nettleship*, 737 F.2d 130 (1st Cir.1984) (summary judgment for defendant prison administrator where allegations rested on prison conditions beyond his control), the district court granted the defendants' motion for summary judgment.

In September 1985, in a similar case, we reversed a grant of summary judgment to defendant-prison officials because plaintiffs alleged prison conditions over which the defendants may have exercised control. *See Quinones v. Nettleship*, 773 F.2d 10 (1st Cir.1985). In light of that decision, plaintiffs appeal from the district court's grant of summary judgment to defendants. Because we find *Quinones* controlling, we vacate the district court's decision and remand for further proceedings.

In *Pinto v. Nettleship*, 737 F.2d 130 (1st Cir.1984), we upheld the grant of summary judgment in favor of Maldonado (Superintendent of Bayamon) in another 1983 action seeking damages for the death of a pretrial detainee at Bayamon. The allegations in that case were that "there was an extreme condition of overcrowding, lack of vigilance and protection of inmates due to lack of sufficient prison guards", and that the defendant had been physically incapable of protecting any inmate's life. *Id.* at 131. Maldonado moved for summary judgment, stating he had no personal knowledge that the decedent had any special need for protection. Plaintiffs did not contest that point, but claimed that Maldonado was responsible for the extreme conditions at the

prison that caused decedent's death. The record, however, left uncontested that these conditions were beyond his control. "As plaintiffs offered nothing to suggest the superintendent could have done more than he had, and as a jail official in a 1983 action cannot be held liable in damages for conditions beyond his control, we concluded that the district court had correctly granted summary judgment on the record before it." *Quinones*, 773 F.2d at 13.

One year later, in *Quinones v. Nettleship*, 773 F.2d 10 (1st Cir.1985), we reversed the grant of summary judgment where plaintiffs had raised genuine issues "regarding the defendants' responsibility for or control over the conditions complained of." *Id.* at 14. We rejected the defendants' assertion that *Pinto* controlled their case. As in *Pinto*, the defendants stressed that they were not aware that the decedent's life was in danger. We stated:

"Apparently defendants believe that knowledge that prison conditions constitute a threat to a particular inmate—in contrast to knowledge that prison conditions constitute a threat to inmates generally—is always a prerequisite to liability for the death of an inmate.

We did not go that far in *Pinto*, nor did we mean to foreclose the possibility that knowledge of certain aggravated conditions may be tantamount to knowledge of a 'pervasive risk of harm' to inmates. Rather, what was dispositive in *Pinto* was the showing that defendant had made in response to the theory of liability underlying plaintiffs' complaint. The theory of liability in *Pinto* was that overcrowding and lack of sufficient guards had resulted in decedent's death. Defendant superintendent contended these conditions were beyond his control and submitted materials in support thereof, plaintiffs failed to controvert the defendant's showing, and hence summary judgment was appropriate." *Id.* at 13.

In contrast, the *Quinones* plaintiffs raised genuine issues of material fact "regarding defendants' responsibility for or control over the conditions complained of." *Id.* at 14. The complaint alleged a serious breakdown of prison authority and control, as

well as other conditions over which the defendants may have exercised control.

We believe that the instant case is virtually indistinguishable from *Quinones*.[1] The plaintiffs' complaint refers "to more than overcrowding and insufficient guards, conditions which may be beyond one or more defendants' control." *Id.* at 13. The complaint cites, *inter alia*, an inadequate system of classifying inmates, the failure to separate pre-trial detainees from convicted prisoners, the failure to station guards in the interior of cell blocks, and a history of attacks, murders, and gang wars. *Id.* "At least some of these problems can be inferred to be matters over which individual defendants exercise control." *Id.* As in *Quinones*, plaintiffs have alleged a serious breakdown of authority and control, bordering on anarchy. In their words, Bayamon had "a long history of attacks and murders by inmates upon other inmates that was equivalent to a reign of terror in that institution".[2] Moreover, as in *Quinones*, plaintiff's action is "not limited to the superintendent but also named the person in charge of security and the Administrator of Corrections as defendants". *Id.* at 13.

In light of the above, summary judgment could only be granted if the defendants "demonstrated the absence of any genuine issue of material fact regarding defendants' responsibility for or control over the conditions complained of." *Id.* at 14. The defendants did not do so; in fact, they did not even attempt such a showing. Instead, in their motion for summary judgment, the defendants contended that liability could only be imposed on them if plaintiffs established that "decedent requested protection or that defendants were aware that decedent was in more danger than the general penal population." In support of this prop-

osition, the defendants relied on *Pinto*, as well as the district court's decision in *Quinones*, which was subsequently reversed. And the district court, in granting the defendants' motion, emphasized that the "defendants were not aware decedent was in any greater danger than any other pretrial detainee." As we made clear, however, in *Quinones*, "knowledge of a particular threat to a particular inmate—in contrast to knowledge that prison conditions constitute a threat to inmates generally, is [not] a prerequisite to liability for the death of an inmate." *See id.* at 13.

The defendants' only attempt to demonstrate the absence of a genuine issue as to their control over the conditions related to the plaintiffs' claim that, had pretrial detainees been dressed differently than sentenced inmates, prison officials could have kept the two groups separated. Defendants argued that no evidence was presented showing that they had the money to buy new uniforms. As we stated in *Quinones*, "[t]hat defendants had to work within budgetary limitations does not, on the present record, necessarily indicate they were powerless to deal with the 'state of war' alleged by plaintiffs and not denied by defendants." *Id.* at 15.

Beyond this, the district court did not find the absence of genuine issues regarding the defendants' responsibility for or control over the allegedly unconstitutional conditions. Instead, the court listed the various measures the defendants respectively took in their efforts to improve the conditions prevailing at Bayamon, and concluded:

"We find that defendants did not act with deliberate indifference or reckless disregard to decedent's safety. On the contrary, defendants actively pursued all

---

1. We find unpersuasive the defendants' *sole* attempt (constituting just one sentence in their thirty-one page brief) to distinguish *Quinones* from this case. Defendants claim that *Quinones* is not controlling because here the district court had before it a fully-developed record. The record, it seems to us, only further reveals genuine issues, ripe for factfinding, regarding the "defendants' responsibility for or control over the conditions complained of," *Quinones*, 773 F.2d at 14.

2. The district court stated that it "is uncontested that the security conditions at Bayamon at the time of the incident giving rise to this litigation were almost non-existent and that defendants were aware of it. The overcrowding in the total Corrections system, lack of penal personnel and limited economic resources culminated in a crisis which lead to numerous killings of inmates by other prisoners."

means within their control in trying to ensure the physical protection of all pre-trial detainees."

Even though the district court had heard the evidence presented during the first trial, it was not entitled to usurp the role of factfinder in ruling on the defendants' motion for summary judgment.

We emphasize that on remand much remains to be done to identify the precise issues that may be suitable for a jury and to instruct thereon. As we said in *Quinones*, "[o]n remand the district court may face unsettled or difficult [legal] questions concerning ... the standard against which to measure prison officials' liability (or lack of liability) ..." 773 F.2d at 15. The law is not fully developed in this area. The court will have to articulate a legal standard as to when a combination of uncontrolled prison conditions and an administrator's knowing failure to take steps within his power, will add up to a constitutional violation. We do not rule out the possibility that, when all the evidence is in, plaintiffs will not have made out a legally sufficient case against one or more of the defendants. We only hold here that it is premature to grant summary judgment.

*Vacated and remanded.*