**Ramon RONDON PINTO and Andrea Carmona Cruz, Plaintiffs,**

v.

**Carlos JIMENEZ NETTLESHIP, in his personal capacity and in his representative capacity as Director of Prisons of the Administration of Correction of the Commonwealth of Puerto Rico, Defendant.**

**Civ. No. 84–1219(CC).**

United States District Court, D. Puerto Rico.

May 6, 1987.

David Rive-Rivera, Vargas & River, Hato Rey, P.R., for plaintiffs.

Howard Charles, Acting Director, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for defendant.

## OPINION AND ORDER

CEREZO, District Judge.

The death of inmate Ramón Rondón Cardona spurred this civil rights action for damages instituted on May 9, 1984 by his parents, Ramón Rondón Pinto and Andrea Carmona Cruz. It is alleged that defendant Carlos Jiménez Nettleship was responsible in his individual and official capacity as "Director of Prisons of the Administration of Correction of the Commonwealth of Puerto Rico" for the murder of their son on or about December 12, 1981, "while under the custody of defendant in the Bayamón Regional Jail". Defendant is allegedly liable for this inmate's death because there was an extreme condition of overcrowding at the prison and lack of sufficient guards to offer adequate protection to the prisoners. The complaint indicates that defendant "was physically incapable of providing protection to the life of any inmate in his institution" and that this failure to afford adequate protection to plaintiffs' son was not an isolated incident but "part of a concerted pattern of action by the defendant in failing to guarantee the prisoners in custody of the Administration of Correction of the Commonwealth of Puerto Rico their constitutional rights and their physical protection."

On September 17, 1984 defendant filed a motion for summary judgment indicating that plaintiffs were barred by either res judicata or collateral estoppel from bringing any claims against defendant Jiménez Nettleship because a prior action filed by plaintiffs against Jiménez Nettleship and Victor Maldonado, the warden of the Bayamón prison, had been dismissed by summary judgment which had been affirmed by the First Circuit in *Rondón Pinto v. Jiménez Nettleship*, 737 F.2d 130 (1st. Cir. 1984). As defendant's motion and accompanying documents show, the prior action (civil 82–2582) contained similar, if not identical, allegations which the district and circuit courts found insufficient to establish personal liability on the part of Maldonado, given this particular defendant's affidavit denying knowledge that plaintiffs' son was in any particular danger and the absence of respondeat superior liability in civil rights actions. The action against codefendant Jiménez Nettleship, however, had been dismissed earlier (May 9, 1983) due to plaintiffs' failure to make timely service on him as required by Rule 4(j) Fed.R.Civ.P. (120 days).

Defendant also moved for summary judgment on grounds that the complaint failed to establish his personal liability for the death of plaintiffs' son and accompanied a sworn statement indicating that he did not know that plaintiffs' son was in any special danger nor did the prisoner inform him of being in any danger or request any special protection. Mr. Jiménez also stated under oath the actions he took during his one year directorship to improve prison conditions and to reduce prison crime. He stated that he assigned to the Bayamón jail all the penal guards that he could provide

with the budget available which had been approved before he took office; he commenced a program to identify problematic inmates, planted informants in the prisons and relocated prisoners who would testify in murder cases; he employed special agent José Cancel to investigate prison violence and sought assistance on this matter from the Special Investigations Unit of the Police Department; and requested for the prison budget of the next fiscal year an increase of 33% in the number of prison guards and 25 million dollars to build additional quarters for inmates.[1] Defendant finally stated that on the last two months of his directorship there had been no prison murders.

After more than two months elapsed and plaintiffs' requested extensions to oppose had expired, the Court had to expressly order them to respond to the motion for summary judgment. They finally filed an opposition arguing that neither res judicata nor collateral estoppel applied because the prior judgment had not been between the same parties now litigating. They contended that the prior case only adjudicated defendant Maldonado's liability, who as mere warden of the Bayamón jail had no authority to determine the number of penal guards assigned to Bayamón or the transfer of prisoners, whereas defendant Jiménez Nettleship, as prison director, could. However, plaintiffs did not file any sworn statements supporting their argument nor specifying Nettleship's particular liability aside from his general duty to administer the Puerto Rico prison system and how this was affected by the "endemic" problem of overcrowding and insufficient prison guards which plagued the entire system. They also failed to refute, or even address through allegations, defendant's sworn statements that he was unaware of any particular danger to their son's life, aside from the general risk suffered by any prisoner in the system. Replies and surreplies ensued pointing to additional caselaw in the ever developing law of civil rights.

The Court then referred the matter to the Magistrate for Report and Recommendation.

The Magistrate found that, although res judicata was not applicable because the action against Mr. Jiménez Nettleship had been dismissed without prejudice before the Court ruled on Maldonado's claim, the defensive use of collateral estoppel precluded plaintiffs from litigating anew the defeated claims because they had an opportunity to do so in the prior case. The Magistrate also concluded that plaintiffs had not defeated defendant's well supported contentions that there was no personal liability on his part and recommended dismissal of the complaint on these grounds also. In addition, the Magistrate found that plaintiffs failed to make the necessary allegations for a section 1981 and 1985 conspiracy case for there were no such allegations of conspiracy nor of "class based invidious discriminatory animus" behind the acts. Plaintiff opposed the Report and Recommendation arguing that there was no need to show personal involvement or knowledge on the part of defendant in order to be found liable for the prisoner's death and cited *Quiñones v. Nettleship*, 773 F.2d 10, 13–15 (1st. Cir.1985) as supportive of this proposition. Plaintiff also cited from selected findings of *Feliciano v. Barcelo*, 497 F.Supp. 14 (D.P.R.1980) as to the general sorry state of Puerto Rico's prisons and to a report supposedly prepared by a team of four correction specialists who visited the prisons in 1981. They made reference to statistics supposedly showing the yearly increase in prisoners' deaths in the Bayamón jail. However, they did not present any document or report supporting these allegations. Plaintiffs also failed to contest the Magistrate's finding on the Section 1981 and 1985 claims.

We agree with the Magistrate's last conclusion that the complaint must be dismissed for failure to establish defendant Jiménez Nettleship's liability. Even as-

---

1. Defendant later indicated in answers to plaintiff's interrogatories that he defended these proposed increases for the prison's budget before the Puerto Rico Legislature. Representative José Arrarás told him he could not get the increase in guards requested, but a substantial part of the increase in budget was approved.

suming that this Court can entertain this claim for damages by the parents of the inmate whose civil rights, not theirs were violated, *See Valdivieso Ortiz v. Burgos*, 807 F.2d 6 (1st. Cir.1987) (holding that the stepfather and siblings of a prisoner murdered by prison guards did not have a constitutionally protected interest which could be actionable under 42 U.S.C. Sec. 1983), and that collateral estoppel did not apply, we believe plaintiffs failed to meet the thrust of defendants well supported motion for summary judgment as they are required to do by the Rule ("party may not rest upon the mere allegations or denials of his pleading") R. 56(e) Fed.R.Civ.P.; *See e.g., Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975) *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); (nor on the unsupported arguments in the briefs) *See Bryson v. Royal Business Group*, 763 F.2d 491, 494 (1st Cir.1985). The *Cortes Quiñones* opinion cited by plaintiffs to support their crossed-arms approach is inapplicable to the circumstances of this case. First of all, the *Cortes Quiñones* opinion does not abandon, as suggested by plaintiffs, the basic principle that liability for damages can only be imposed on the official if he was involved personally through acts or omissions in the deprivation of constitutional rights. *Cortes Quiñones* only indicated that this personal involvement on the part of higher echelon prison officials in that particular case could be shown not only through the official's personal knowledge of the prisoner's plight and their total indifference to it, but also by the prison official's deliberate disregard of statutory duties which, if performed, could have prevented the constitutional harm from occurring. *id.* at pp. 14–15. The Court found that, in view of the particular allegations in that case concerning defendants' knowledge of gang warfare, inadequate prisoner classification system, lack of guards at the particular place in the Arecibo prison where the prisoner was murdered, and the many specific and notorious incidents of prison violence alleged, defendants' general sworn statements were insufficiently vague and the Court remanded for further development of the record. It is important to note, however, that the *Cortes Quiñones* case, in ruling that the affidavits were insufficient, expressly distinguished the specific allegations in that case from the general ones in the *Pinto v. Nettleship* case which are identical to the ones alleged herein, and found that this was the principal reason why the affidavits in the *Pinto* case had been deemed sufficient. *Cortes Quiñones*, 773 F.2d pp. 12– 15. In addition, it is equally important to note that the Circuit Court also considered that the case had to be remanded in view of the novel issue of what legal standard would be applied to prison officials, a standard which the Court intimated could depart from the general tort duty of custodians of prisoners to provide for their safety. Two later decisions by the Supreme Court rejected establishing a standard of constitutional liability for prison officials based on such tort duty and clarified the standard as one requiring more than mere negligence. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 665– 66, 88 L.Ed.2d 662 (1986); *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668, 88 L.Ed.2d 677 (1986). In *Cannon*, the Court found that a warden's failure to respond to a note by an inmate indicating the possibility of injury by other prisoners did not constitute a deliberate or callous indifference to a prisoner's needs but merely negligent discharge of administrative duties which was not actionable as a constitutional violation. In overruling the mere negligence approach of *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), the Court in *Daniels* considered that the due process protection afforded by the constitution was mainly concerned with curtailing the government's abuse of power and not with traditional tort principles and considered, therefore, that "far from an abuse of power, lack of due care suggest no more than a failure to measure up to the conduct of a reasonable prison. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the cen-

turies old principle of due process of law". *Id.* 474 U.S. at ——, 106 S.Ct. at 665.

In the present case, neither the conclusory allegations of plaintiffs', which have been represented at all times by counsel, nor the limited opposition to the motion for summary judgment show the presence of genuine issues on material facts regarding former director Jiménez Nettleship's liability. Defendant's liability for the death of plaintiff's son has been couched strictly in terms of his general duty to insure prison safety by providing sufficient penal guards and alleviating prison overcrowding. Not only is reliance on such grounds for civil rights liability of questionable value given the *Daniels & Davidson*'s decisions, but, defendant's detailed sworn statement explaining the actions he took to improve prison safety and his lack of knowledge that plaintiffs' son was under any particular danger, other than general risks suffered by any inmate imprisoned in any system of jails, clearly show absence of deliberate or gross indifference. The situation does not even rise to the level of mere negligence, unless prisoner custodians are held to an absolute standard of liability, responsible for any injury suffered by any inmate. Plaintiffs' dubious allegations of liability and their failure to present an adequate opposition, despite the ample opportunity to do so, fail to show the existence of a cause of action under section 1983.

As to the section 1981 and 1985 "claims", we agree with the Magistrate's unopposed conclusions that no such claims were ever properly alleged or shown to exist.

The Magistrate's Report and Recommendation is APPROVED and ADOPTED and the complaint is hereby DISMISSED. Judgment shall be entered accordingly.

SO ORDERED.