**Juan E. CRUZ, et al., Plaintiffs,**

v.

**Robert SAVAGE, et al., Defendants.**

**Civ. No. 84–1378 (RLA).**

United States District Court.
D. Puerto Rico.

June 2, 1988.

Maria Sandoval, Nachman & Fernandez Sein, Santurce, P.R., for plaintiffs.

Wanda Rubianes, Office of the U.S. Atty., Hato Rey, P.R., for defendants.

### OPINION AND ORDER

ACOSTA, District Judge.

Plaintiffs filed a suit against defendants [1] under the Bivens doctrine [2] alleging ten causes of action including pendent state

---

1. The suit has included as a codefendant, Colonel Robert C. Deshler, Commander of Fort Buchanan, the military base where the Antilles High School is located. This action against Col. Deshler was dismissed after the Court determined that the barring of plaintiff Monica Cruz from the base during non-school hours was nei-

ther arbitrary nor capricious. Opinion and Order dated February 14, 1985 (docket No. 38).

2. *Bivens v. Six Unknown Federal Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979).

**550**

claims for which they sought monetary damages. After four days of trial a verdict against the plaintiffs on all counts submitted was returned by the jury. Defendants now seek $40,625.00 in attorney's fees to be imposed against plaintiffs under the bad faith exception to the so-called "American Rule"[3] and/or against plaintiffs' counsel personally as a sanction pursuant to Rule 11 of the Federal Rules of Civil Procedure.

It is defendants' contention that plaintiffs filed and prosecuted this case "throughout the course of three years knowing at all times the falseness of the factual allegations claimed in their complaint." They contend further that in so proceeding "plaintiffs acted in bad faith forcing the expenditure by the United States of valuable attorney time."[4]

Plaintiffs respond to these contentions by asserting that defendants' motion suffers from certain defects in form but mostly that plaintiffs should not be punished or "chilled" for prosecuting "novel issues of law" in good faith. Citing a 1961 5th Cir. case plaintiffs argue that the "novel issue" in this case is whether or not a student is entitled to know her "accusers" during a school disciplinary proceeding.

## FACTUAL BACKGROUND

The background of the case is as follows:

1. On February 10, 1984 six students, including coplaintiff Monica Cruz, of the Antilles High School[5] were huddled between two trucks that were parked in an "off limits" area.

2. The students were seen by the school audio-visual technician, Luis J. Falú. Mr. Falú, who had an opportunity to observe the students, had seen two male students exchange what he believed to be a marijuana cigarette.

3. Mr. Falú went to the cafeteria where he informed Mrs. Jean Ruiz, Assistant Principal, of what he had seen and the fact that he believed the students were smoking marijuana.

4. Mrs. Ruiz went to observe the area and noticed smoke rising up from between the trucks.

5. At this point, Mrs. Ruiz asked Mr. Weidline, a physical education teacher, to contact the Military Police of the base and ask that a patrol be sent to the area.

6. Mrs. Ruiz then went back into the school to observe the area from another classroom window which faced the area of the trucks directly. A short time later, Mrs. Ruiz heard a human whistle and saw Monica Cruz walk out from between the trucks, apparently to see who was whistling, and then return to the group. She saw each of the students as the group of six disbanded. Monica Cruz left under an umbrella with one of the six. Mrs. Ruiz was able to identify them visually as they were departing.

7. Later the six students were brought to the Principal's office.

8. Mrs. Ruiz then asked Monica Cruz to accompany her to her (Mrs. Ruiz's) office. Monica was informed in the presence of the other five students that she was accused of

**3.** Defendants' Motion Requesting Attorney's Fees, p. 4, docket No. 140. The "American Rule" simply is that attorneys are paid by their respective clients no matter the outcome of the case. It is unique to the United States insofar as the rule in most, if not all, European countries is that the prevailing party receives attorneys fees from the losing party. The exception to the American Rule was carved out in *Alyeska Pipeline Service v. Wilderness Society,* 421 U.S. 240, 258–259, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 which held that courts possess an inherent power to assess attorney's fees when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons...." Where a litigant

is motivated by vindictiveness, obduracy (stubborness) or mala fides, the assertion of a colorable claim will not bar assessment of attorney's fees. *Campana v. Muir,* 615 F.Supp. 871 (D.C. Pa.1985) citing *In re National Student Marketing Litigation,* 78 F.R.D. 726, 728 (D.D.C.1978), *aff'd,* 663 F.2d 178 (D.C.Cir.1980).

**4.** *Id.*

**5.** Antilles High School is a member of the Antilles Consolidated School System and is located on the grounds of Fort Buchanan, a United States military installation.

smoking marijuana.[6] Monica Cruz accompanied Mrs. Ruiz to her office where she denied smoking marijuana.

9. After being asked if she had anything illegal in her possession, Monica Cruz took a folding pocketknife out of her purse and handed it to Mrs. Ruiz.

10. All the investigations made by the M.P.'s were carried out in the presence of the respective student's parents after the students were advised individually, in the parents' presence, of their rights. Monica Cruz, and her parents, refused to have her answer any questions.

11. One of the six students, Carlos Solis, admitted that he and the other boys had smoked a marijuana cigarette but could not say if Monica Cruz smoked from it. Another student, Robert Sanes, admitted smoking a marijuana cigarette but stated that all six had shared it and unequivocally included Monica Cruz.

12. On February 15, 1984, the Principal, codefendant Dennis Smith, sent a letter to Mr. and Mrs. Cruz informing them that their daughter Monica was charged with possession of marijuana, possession of a dangerous knife, being in an unauthorized area, and smoking during school hours. Mr. and Mrs. Cruz were advised in the letter that Monica would be suspended for ten days. The letter further stated that they had a right to appeal to the School Disciplinary Committee and that the suspension would be held in abeyance until the Disciplinary Advisory Committee issued its decision.

13. The letter was given to and read by Monica Cruz in the office of Mrs. Ruiz. Monica requested explanations of the contents of the letter and Mrs. Ruiz explained the letter as well as the appeal procedure to which she was entitled.

14. The next school day after February 15, 1984, Monica Cruz delivered a letter from her father to codefendant Smith dated February 15, 1984, which in effect constituted an appeal request.

15. Monica Cruz subsequently met with Mrs. Ruiz who further explained the appeal procedure to her and gave her a list of nine people from which she was to select one teacher, one student, and one parent. These three people would constitute the Disciplinary Advisory Committee which would review the incident and the proposed punishment.

16. Monica made her selection, Gregory Bush, a teacher, Gerardo Picó, a student, and Catalino Neris, a parent.

17. The Disciplinary Advisory Committee met on February 23, 1984. After reviewing the evidence and listening to the comments of coplaintiff Juan Cruz, they unanimously voted to uphold the disciplinary action taken by the School Superintendent.

18. By letter dated February 27, 1984, codefendant, Dennis Smith, Principal of Antilles High School, advised Mr. and Mrs. Cruz of the Advisory Committee's decision. Monica's ten-day suspension went into effect on March 1, 1984.

19. The other five students received the same punishment as Monica Cruz. None of them, however, filed suit against the school officials.

20. The suit commenced on May 21, 1984 with the filing of a lengthy complaint consisting of 206 paragraphs.

21. After protracted discovery proceedings a motion for summary judgment was filed by the defendants which resulted in the Court dismissing the action against the defendant, Col. Robert C. Deshler, as mentioned previously.[7]

22. The Court, however, denied the dismissals of the remaining defendants because of the application of a favorable inference under the required standard of review[8] and because of attorney Sandoval's

---

6. See also plaintiffs' Complaint, paragraphs 12, 21, and 22 which acknowledges that Mrs. Ruiz was the accuser.

7. See Footnote No. 1.

8. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1355–56, 89 L.Ed. 2d 538 (1986).

implicit promise that at trial she would produce the necessary facts to sustain her client's claims.

23. The students were also banned from the base during non-class hours by order of the Base Commander which meant they were not permitted to participate in extra-curricular activities held on base for the remainder of the school year. This action was taken by the Commander pursuant to his statutory authority to control access and egress as well as all activities on the base.

## DISCUSSION

A mountain was in labor, sending forth dreadful groans, and there was in the region the highest expectations. After all, it brought forth a mouse.[9]

In this mountain of a case, thanks to the wisdom of the jury, not even a mouse came forth.

Stripped of its vines and useless foliage this case is essentially about a female high school student who, in the company of five male fellow students, admitted that on February 10, 1984, she was in an unauthorized area. She also admitted owning, and voluntarily produced to Mrs. Ruiz, a knife which she possessed on school grounds. She also admitted to smoking cigarettes on school grounds. According to the school's regulations anyone of these violations could have brought about the suspension which the plaintiff received as would have any other student. What plaintiff, Monica Cruz, consistently denied was that she smoked a marijuana cigarette in the company of the five fellow students which was also a charge against her. Solely on the basis of this denial and the claim that her accusers (of smoking marijuana) were never made known to her, she, her father, mother, and sister filed this action alleging ten claims for relief.

In view of the fact plaintiff Monica Cruz admitted three violations, any one of which could have resulted in suspension, the question of due process became moot insofar as these charges were concerned. The regulation of the school was clear and unequivocal concerning the punishment to be meted out for these types of violations.[10] What we were left with, essentially, was whether or not Monica Cruz was afforded due process with respect to the charge that she was smoking marijuana on February 10, 1984. One view could be that since she was suspended for acts which she admitted, what difference does it make that she know who accused her of putting a marijuana cigarette to her lips and inhaling the smoke. The difference, as plaintiffs insisted throughout the proceedings, was that because there was the *possibility* that Monica Cruz could be charged criminally by the military prosecutors for smoking marijuana on the base it was essential that her accuser be made known to her.[11] Yet, in spite of the fact that this issue "lay at the core of their constitutional claims" (underline supplied) [12] and further, in spite of the fact that "the statute of limitations as to the (criminal) charge of smoking marijuana has not yet run" [13] plaintiffs acquiesced to defendants' Rule 41 motion with respect to the fourth claim for relief.[14] The reason given for relinquishing this claim is best expressed in the words of plaintiffs' attorney herself:

---

9. Phaedrus (c. A.D. 8) IV, 22:I.

10. Group II, III, and V and Plan C and D of the Code of Student's Rights, Responsibilities and Conduct of the Antilles Consolidated School System.

11. Plaintiffs' Memorandum of Law in opposition to defendants' Motion for Attorney's Fees, p. 17. To this day we fail to understand the logic of this assertion since were Monica ever to be prosecuted criminally she would *then* certainly be entitled to the identity of her accuser(s).

12. *Id.* p. 17.

13. *Id.* p. 4.

14. This claim charged codefendant Smith with intimidating and threatening Monica's father, Juan Cruz, to not retain counsel in "violation of Monica Cruz's right to counsel in criminal matters as guaranteed by the sixth amendment of the United States Constitution and the Constitution of Puerto Rico."

Plaintiffs explained that plaintiffs' Fourth Claim for Relief was alleged at a time when it was unclear whether the Criminal Investigative Division at Fort Buchanan was going to bring criminal charges against Monica Cruz. <u>Out of an abundance of caution,</u> ... they were required to allege a violation of Monica Cruz's constitutionally guaranteed right to counsel in criminal matters, since it was unclear whether any of the statements made by her, at any time, would later be used against her. (underline supplied) ... It became subsequently evident, however, that military prosecutors were not interested in prosecuting Monica Cruz.[15]

This fact should have, and probably did, become "evident" long before trial, yet attorney Sandoval's zeal overwhelmed her judgment to the detriment of the Court's and the parties' time and resources. *See Figueroa Rodriguez v. López Rivera,* slip op. Nos. 87–1319 and 87–1320 (1st Cir.April 22, 1988) [available on WESTLAW, 1988 WL 105507] (We are confident ... that Rule 11— which we have recently construed as requiring attorneys to conduct (themselves) in a manner bespeaking reasonable professionalism and consistent with the orderly functioning of the judicial system ... will serve as an adequate brake should the bar's zeal overwhelm its judgment.) (Citing *In re D.C. Sullivan Co.,* 843 F.2d 596 (1st Cir.1988)).

Plaintiffs apparently acknowledged the anticipatory nature of their claim and gave it up. What went with it, of course, was the "core" of her constitutional claim, i.e., the violation of her right to *know her accusers* assuming, *arguendo,* she had such a right under these circumstances. In any event, she knew from the beginning that Mrs. Ruiz was her accuser. As it later developed at trial plaintiffs apparently wanted to know which of the five companions would serve as a witness to the fact that the cigarette was a marijuana cigarette. For what exact purpose this information was needed we are still left guessing.

15. Plaintiffs' Memorandum of Law in opposition to defendants' Motion for Attorney's Fees,

### The Claims

Plaintiffs' first claim for relief alleges that Monica Cruz's suspension and probation were imposed without notice and an opportunity to be heard in violation of the Fifth Amendment to the Constitution of the United States. The evidence at trial clearly showed that the unambiguous procedure outlined by the school code was duly adhered to by defendants. As such, plaintiffs' attorney's unrelenting examination of the witnesses on this issue was a vexatious time consuming exercise which bore no fruit.

The second claim for relief alleges that Dennis Smith intentionally coerced Monica Cruz's father, plaintiff Juan E. Cruz, not to retain legal counsel on Monica's behalf thus depriving her of prior notice and a fair and impartial hearing. The Court finds that this is a completely frivolous claim which only served to multiply the proceedings and unnecessarily waste time. Assuming, *arguendo,* that defendant Smith told coplaintiff Juan Cruz that he was not entitled to retain an attorney on his daughter's behalf, it would be ludicrous to believe that this constituted coercion when he was completely free to consult an attorney on this very point as well. Mr. Cruz cannot hold Mr. Smith responsible for his own misjudgment. In any event, the more important fact is that there was not one shred of evidence offered to show there was any coercion. In fact, paragraph 125 of plaintiffs' complaint concedes that Mr. Smith would allow an attorney to be present at the hearing. What the evidence did show was that Mr. Cruz apparently chose to feel coerced.

With respect to plaintiffs' third claim concerning the alleged illegal search of Monica Cruz's pocketbook and locker, the testimony of both Mrs. Ruiz and Monica Cruz herself clearly established that she volunteered to empty her pocketbook and consented to the search of her locker. The

pp. 3, 4.

Court finds that this was an unsubstantiated frivolous claim which plaintiffs' attorney insisted on pressing despite the holding by the Supreme Court in *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985) [16] and the lean evidence presented to the jury. There is no more eloquent manifestation of plaintiffs' attorney's pertinacious and obdurate attitude which she had exhibited throughout the trial than her own words:

> Plaintiffs' Third Claim for Relief was filed before the Supreme Court's opinion in *New Jersey v. T.L.O.*, 469 U.S. 325 [105 S.Ct. 733, 83 L.Ed.2d 720] (1985) issued. After the Supreme Court's decision in *New Jersey v. T.L.O., supra,* was announced, plaintiffs continued to prosecute this cause of action in good faith. Plaintiffs argued in their opposition to defendants Motion for Dismissal and/or For Summary Judgment filed in July of 1985, that the Supreme Court had held that students could not be subjected to "unreasonable" searches and seizures. Plaintiffs argued in July of 1985 and <u>argue here,</u> that the search conducted of Monica Cruz was, and continues to be, <u>regardless of the verdict rendered</u> in this case, inherently unreasonable. (Underlined supplied).[17]

Plaintiffs' fourth claim for relief was, as mentioned above, voluntarily withdrawn at trial as being anticipatory.[18] The fifth claim was also withdrawn by plaintiffs for being, for all practical purposes, indistinguishable from plaintiffs' first claim.[19] The withdrawal of the claim, however, was made after plaintiffs rested their case thereby having caused an unnecessary waste of time.

Plaintiffs' claims for relief six, seven, and eight basically allege the same thing, that is, that Monica, Juan, Julia and Alicia Cruz suffered extreme embarrassment and emotional anguish because defendants "needlessly and carelessly disseminated and published to third persons false information relating to Monica Cruz smoking Marijuana." These three causes of action refer to the two defamation claims (Claims 6 and 7) and the right to privacy claims (Claim No. 8). Claim Six relates to the alleged "derisions" of Monica Cruz "among her classmates as well as teachers."[20] Claim Seven relates apparently to the same derision of Monica Cruz as affecting the other coplaintiffs. The evidence presented clearly showed that defendants' dissemination of the information with respect to the violations and the hearing was not deliberately "needless and careless."[21] In any event, plaintiffs did not present any relevant evidence to support the allegations of "derision" other than self-serving statements about their feelings of embarrassment.

Plaintiffs' ninth claim for relief charges that plaintiff Juan Cruz's right to privacy was violated thus causing him embarrassment and irreparable harm. Plaintiffs claim defendants' actions *"forced* Mr. Cruz to discuss the matter (of his daughter Monica's suspension) with his employer causing him to have lost status at his place of employment as well as negatively affecting his career prospects."[22] Absolutely no evidence whatsoever was presented to sustain this cause of action which is also the most ludicrous and consequently the most frivolous of plaintiffs' claims. How can Ms. Sandoval use such strong language and bring these serious charges which she then completely fails to support despite her implicit promise by way of opposition to mo-

---

**16.** *New Jersey v. T.L.O., supra,* held that under ordinary circumstances the search of a student by a school official would be justified in its inception where there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school.

**17.** Plaintiffs' Memorandum of Law in opposition to defendants' Motion for Attorney's Fees and Costs, p. 11 (docket No. 142).

**18.** Plaintiffs' Motion in Opposition to Defendants' Motion for Attorney's Fees, p. 3 (docket No. 142).

**19.** *Id.* p. 4.

**20.** *See* plaintiffs' complaint, para. 164.

**21.** *Id.* para. 188.

**22.** *Id.* para. 169.

tion for summary judgment that she could sustain the charge?

The tenth claim for relief appears to be an assertion of a catch-all pendent claim under an unspecified law of the Commonwealth of Puerto Rico for the intentional inflicting of extensive emotional distress and ridicule on the plaintiffs for "no legitimate reason." The Court assumes that the phrase "for no legitimate reason" means based on all the violations alleged in the other counts which have already been discussed.

In addition to the above, there was no relevant evidence produced against codefendant Dr. Rafael Ramírez. Plaintiffs' attorney knew or should have known as an experienced civil rights litigator that liability in damages can only be imposed upon officials who were involved personally in the deprivation of a constitutional right, *Pinto v. Nettleship*, 737 F.2d 130 (1st Cir. 1984). She should have known this particularly in light of the fact that this case ruling was referred to and discussed in *Crisóptimo v. Nettleship*, 800 F.2d 11 (1st Cir.1986) a case in which the plaintiffs were represented by her law firm.

Further, plaintiffs' attorney systematically and consistently called hostile witnesses to the stand and attempted to impeach their testimony with respect to what they observed or did in connection with the school's charges against coplaintiff Monica Cruz. The Court, on numerous occasions, to no avail, admonished plaintiffs' attorney to adhere to the issue of whether or not plaintiff Monica Cruz received due process and to desist from attempting to try the issue of whether there were sufficient grounds for the accusation. This conduct was needless and time consuming. Further, the evidence she attempted to adduce was related to matters which Monica Cruz had admitted and was, therefore, totally irrelevant.

Throughout the pre-trial and trial proceedings plaintiffs' attorney continually engaged in obfuscation of the issues, hyper-

bolism and groundless presumptions. She insinuated that the Court was biased and announced her refusal to produce and identify the knife subject of the suit which she admitted had been turned over to her by the coplaintiff Juan Cruz [23] thus unnecessarily causing a further waste of time by the establishment of the authenticity of the knife through other independent evidence.

## THE LAW

Title 28 U.S.C. § 1927, which provides for the assessment of sanctions directly against counsel, reads:

> Any attorney or other person admitted to conduct cases in any court of the United States or any territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys fees reasonably incurred because of such conduct.

In addition, Rule 11 provides in pertinent part:

> The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Counsel for plaintiff is known to the Court as an experienced attorney who has zealously litigated numerous civil rights claims in this district. The Court finds that in this case plaintiffs' attorney was overzealous to the point of vexation. In addition, many of her assertions subsequently turned out to be baseless despite her man-

---

**23.** This exchange took place at the bench after Juan Cruz and his daughter Monica Cruz stated

they were unable to identify the knife.

ifestations to the contrary, e.g., her opposition to the motion for summary judgment.

Rule 11 stresses the duties of an attorney as an officer of the court as against his personal duty to his client to represent him in a zealous and rigorous manner. Distinguishing zeal from frivolity is not an easy task. Particularly when an attorney has the duty to "urge any permissible construction of law favorable to his client, without regard to his professional opinion as to the likelihood that the construction will ultimately prevail." [24] Thus, sanctions under Rule 11 must not chill imaginative and innovative advocacy. "Vital changes have been brought by those members of the bar who have dared to challenge the received wisdom, and a rule that penalized such innovation and industry would run counter to our notions of the common law itself." [25] The drafters of Rule 11 were aware of the possible chilling effect and specifically indicated that this was not the purpose of the rule but rather that it was intended to prevent parties from filing patently frivolous claims. The rule requires that an argument for the extension, modification or reversal of existing law be made in "good faith". But "good faith" is not merely the absence of subjective bad faith. Good faith must be established objectively by fulfilling the prefiling duties required by the Rule.[26]

The Court is mindful of the role of "private-attorney generals" and the need to safeguard the rights of individuals oppressed by the state and consequently has no desire to dampen the ardor of attorneys who champion these causes. Nevertheless, there is a point beyond which zeal becomes vexation, the "novel" approach to a legal issue converts to frivolity and steadfast adherence to a position transforms to obdurateness. Here, attorney Sandoval's judgment was clouded by her excessive zeal to the point that her performance became unlawyerly. Though Ms. Sandoval professes to have acted in good faith at all times, particularly regarding the now well articulated and well known *T.L.O.* standard (which we have found that she woefully misconstrues), "/s/ubjective good faith is not the issue; generally, Rule 9011 /and by extension—Rule 11/ demands that counsel's actions comport with an objective standard of lawyerly performance." *In re D.C. Sullivan, supra* at 598–99 (emphasis added). Ms. Sandoval failed to meet this objective standard and she vexatiously multiplied this litigation thus violating both Rule 11 and § 1927.

As stated, the underlying purpose of Rule 11 is to punish and deter frivolous litigation.[27] Compensation, therefore, should not be the primary reason for fee-shifting. It is in this sense that the Court, although finding that plaintiffs' attorney has engaged in frivolous and vexatious conduct and has unreasonably multiplied the proceedings, will not impose a sanction equivalent to the opposing attorney's reasonable attorney's fees despite the fact the Court is empowered to do so.

After a careful review of the defendants' attorney's attested time and work sheet, the Court finds, despite plaintiffs' attorney's arguments in her objections to the fee and costs request, that the defendants' attorney's Court time during trial alone will support, at least, the amount of $3,000.00. This is an amount the Court finds suitable for its purposes with respect to the specific conduct proscribed in 28 U.S.C. § 1927 and Rule 11 while still avoiding the impression that the sanction is imposed to chill counsel's proper zealous conduct.

24. Model Code of Professional Responsibility EC 7–4 (1981); *see also id.* Canon 7 ("a lawyer should represent a client zealously within the bounds of law"); Model Rules of Professional Conduct Rule 1.3 Comment (1983) ("A lawyer should act with . . . zeal in advocacy upon the client's behalf.").

25. *Eastway Construction Corp. v. City of New York,* 762 F.2d 243, 254 (2nd Cir.1985).

26. *See Blake v. National Cas. Co.,* 607 F.Supp. 189, 192 (C.D.Cal.1984) ("Rule 11 permits attorneys to challenge precedent and advance novel theories of law, but at some point on a spectrum, such legal arguments become frivolous).

27. *See Westmoreland v. CBS, Inc.,* 770 F.2d 1168, 1173–74 (D.C.Cir.1985); Text accompanying note 74 *supra.*

In sum, this case thundered for an extended period with lightning charges of serious constitutional torts and high expectations of novel issues; but when Ms. Sandoval's work was done the rumbles abated. There were no torts and no novelty—just the tired, abused sense that a lawyer's overzealousness had unnecessarily strained the judicial process and left us empty but for misgivings of the whole torturous proceedings.

It is, therefore, ORDERED that plaintiffs' attorney shall pay to the defendants the sum of $3,000.00 as attorney's fees which shall be payable within thirty (30) days of the filing of this Order.

IT IS SO ORDERED.