Carlos **MORALES FELICIANO,**
et al., **Plaintiffs,**

v.

Rafael **HERNANDEZ COLON,**
et al., **Defendants.**

**Civ. No. 79–4(PG).**

United States District Court,
D. Puerto Rico.

Oct. 10, 1991.

Nachman & Fernandez Sein, Santurce, P.R., McConnell Valdes Kelley Sifre Griggs & Ruiz-Suria, San Juan, P.R., Carlos Ramos Gonzalez, Santurce, P.R., Jose A. Fernandez Paoli, Miramar, Santurce, P.R., Carlos Garcia Gutierrez, Gonzalez Badillo & Davila, Harry Anduze, Pia Gallegos, Hato Rey, P.R., Jeffrey Williams, San Juan, P.R., for plaintiffs.

Ramirez & Ramirez, Hato Rey, P.R., Pedro Del Valle, Federal Lit. Div., Dept. of Justice, San Juan, P.R., for defendants.

## ORDER

PEREZ–GIMENEZ, Chief Judge.

For over ten years, this Court has been attempting to require the Administration of Corrections of the Commonwealth of Puerto Rico to operate institutions that comply with constitutionally required norms. With isolated exceptions, the record of compliance with this Court's orders has been dismal. Large fines have been levied with seemingly little effect. The lack of resolution and, at least currently, the lack of any prospect of resolution, bring to this Court a sense of judicial frustration without parallel in its experience. Today, the Court takes a step that it hoped to avoid but it believes has become necessary to break the current log jam.

In 1980, this Court entered its first order finding that overcrowding and other conditions in the prison system operated by the Commonwealth violated the constitutional rights of the persons confined there. The defendants were ordered, *inter alia*, to provide at least 35 square feet of living and sleeping space to each inmate in the system. *See Morales Feliciano v. Romero Barceló*, 497 F.Supp. 14, 41 (D.P.R.1980). At no time in the next six years did the defendants meet the court-ordered standard. In 1986, the parties entered into a *stipulation* that again reiterated the 35 square-foot requirement, set a deadline of January 1, 1987, for compliance with the 35 square-foot standard, and specified how such a standard would apply in particular institutions.[1] As of July 1987, inmates still were being subjected to non-compliance with the 35 square-foot standard, prompting this Court to begin imposing contempt fines as a method of coercing compliance. *See Morales Feliciano v. Parole Board of Puerto Rico*, 887 F.2d 1 (1st Cir.1989); July 23, 1987, *Opinion and Order* 697 F.Supp. 26 (finding defendants in contempt and imposing sanctions); August 15, 1988, *Memorandum Opinion and Order* (increasing sanctions); February 6, 1991, *Order re: 142nd Report* at 1 (limiting fines to $300.00 per day per inmate).

With the exception of an eight-month period between January and August 1990, during which defendants achieved compliance with the 35 square-foot standard, defendants have been in contempt of this Court's 35 square-foot directive each and every month. To date, the Commonwealth has paid a total of $68,240,910.00 in fines based on violations of the 35 square-foot standard.[2]

Yet, this enormous outlay by the Commonwealth has not resulted in any reasonable progress towards the goal of a unified plan to achieve compliance. Current conditions of overcrowding are confirmed by the bi-weekly reports submitted by the Court Monitor. Proof of lack of improvement of systems in areas other than overcrowding reaches the Court regularly in the form of reports by the Court Monitor.[3]

1. The stipulation also included provisions requiring the system to reach a level of 55 square feet per inmate by January 1, 1988.

2. The Commonwealth has also paid another $6,803,980.00 for violations of the 55 square-foot directive. The January 10, 1991, order denying defendants' request for further delays in implementation of the 55 square-foot standard and imposing contempt sanctions for violations of it currently is pending before the First Circuit Court of Appeals.

3. *See, e.g., 137th Report of the Court Monitor— First Report on Defendants' State of Compliance with the Court's March 30, 1990, Order,* confirmed April 23, 1991; *148th Report of the Court Monitor—Report Enclosing Expert's Report on Security and Life Safety,* confirmed August 28, 1991; *156th Report of the Court Monitor—Report on Conditions at the State Penitentiary,* confirmed June 10, 1991. Most recently, the monitor filed the *174th Report of the Court Monitor— Report on Water Shortage at the State Penitentiary,* which describes a seven-week water short-

Despite the continuing horrors within the walls of the institutions, defendants produce more excuses than results. Repeated promises by defendants, usually accompanied by a plea for relief from the fines, never result in implementation. For instance, an emergency temporary housing plan that was to add 1,000 beds to the system by June 30, 1991, and thereby provide 55 square feet per inmate, has not yet yielded a single additional bed. This pattern of broken promises and abandoned plans must be stopped, and the business of making lasting changes in the administration of this system must be started.

In an effort to force this case out of its current deadlock, to indicate to the parties that the patience of the Court finally is at an end, and to demonstrate that the Court will settle for nothing less than a satisfactory resolution to this litigation, the Court will order the Clerk of the Court to transfer $1,000,000.00 from the special account currently holding the fine monies in this case to the United States Treasury on October 18, 1991, and to transfer another $1,000,000.00 in the same manner each Friday following October 18, 1991. *See* July 23, 1987, *Opinion and Order;* August 14, 1987, *Order* (imposing sanctions and creating special account).

This transfer is not without warning. In its October 24, 1989, order creating the Special Advisory Committee, the Court put all parties on notice that a continued failure to achieve compliance with the stipulated square footage requirements would result in "the transfer of a substantial amount on deposit ... to the United States Treasury." *See* October 24, 1989, order at 2. Moreover, the Court takes this action against the backdrop of the Court of Appeal's October 3, 1991, *Memorandum and Order,* in which the Court of Appeals set out its intention to postpone decision on defendants' appeal from the 55 square feet implementation order and contempt fines pending decision by the United States Supreme Court on a matter raising similar issues. The Court believes this action to be consistent with the desire expressed in the Court of Appeals' Memorandum and Order that the order withholding decision on the appeal not interfere in any way with efforts on the part of the parties or the Court to achieve a negotiated compliance plan that would move this case forward. At present, the Court knows of no meaningful negotiations between the parties of the type referred to by the Court of Appeals. It is the Court's belief that today's order will force both sides in the direction of such an agreement.

It is important to note that, in deference to the pending appeal of the January 10, 1991, order 754 F.Supp. 942 denying defendants' request for further delay of imposition of the 55 square-foot standard and imposing sanctions for violations of that standard, today's order will affect *only* fine monies collected for contempt of this Court's 35 square feet order and will not include any of the monies collected on the basis of contempt of the 55 square feet order. Furthermore, the transfer of fine monies effectuated by today's order is without prejudice to any plan for use of the fine monies to improve the lot of Puerto Rico's inmate population consistent with prior orders of this Court, to the degree that such monies have not been transferred pursuant to this order.

WHEREFORE, it is hereby ORDERED that the Clerk of the Court shall transfer $1,000,000.00 from the special account currently holding fine monies in this case to the United States Treasury on October 18, 1991.

It is FURTHER ORDERED that thereafter, until further order of the Court, the Clerk of the Court shall transfer $1,000,000.00 from the special account to the United States Treasury each and every Friday.

IT IS SO ORDERED.

following a riot at that overcrowded institution in July 1991.