Dinorah **VELAZQUEZ–MARTINEZ,** individually and as mother with patriae potestas over her minor daughter, Nora Angeli Orta–Velazquez; Myriam Fernandez De Jesus, and Irma Orta–Fernandez, Plaintiffs,

v.

Joseph **COLON,** individually and as Administrator of the Corrections Administration; Ricardo Soto Torres, individually and as Commandant of the Custody Officers at the Bayamón 1072 Institution, and John Doe and Richard Roe, unknown custody officers, Defendants.

Civil No. 95–2193 (JAF).

United States District Court, D. Puerto Rico.

March 31, 1997.

A. Santiago–Villalonga, Andres Guille-
mard–Noble, San Juan, PR, for Plaintiffs.

Luis F. Del Valle–Emmanuelli, Mabel Ra-
mon–Millian, Dir., Fed. Litigation Div., Pe-
dro R. Pierluisi, Atty. Gen.,Dept. of Justice,
Com. of P.R., San Juan, PR, for Defendants.

## OPINION AND ORDER

FUSTE, District Judge.

On December 19, 1994, an inmate in the Bayamón Correctional Institution, Angel Enrique Orta–Fernández, was killed at the hands of other inmates. Plaintiffs, his wife, Dinorah Velázquez–Martínez, on her own behalf and on behalf of their minor daughter, Nora Angeli Orta–Velásquez, the deceased's mother, Miriam Fernández de Jesús and his sister, Irma Orta–Fernández, are suing under 42 U.S.C. § 1983 (1991). Defendants have filed a motion for summary judgment.

## I.

### Facts

Angel Enrique Orta–Fernández was killed on December 19, 1994, by other inmates who strangled him with an electrical wire, then hanged him with a bedsheet to feign a suicide. Plaintiffs assert that the uncontrolled and violent conditions in the Bayamón prison led to Mr. Orta–Ferández' death, and that prison officials are liable for the death.

## II.

### Standing Under § 1983

 For section 1983 liability to attach, state action cannot merely affect plaintiff incidentally, but must be directed to plaintiff. *Pittsley v. Warish,* 927 F.2d 3 (1st Cir.1991). However shocking the murder committed may be, no allegations appear that the institutional conditions that led to the murder were directed toward any of the plaintiffs. Furthermore, the First Circuit made it plainly evident in *Valdivieso Ortiz v. Burgos,* 807 F.2d 6 (1st Cir.1986), that parents and siblings of an adult have no constitutionally-protected right under section 1983 to "freedom of personal choice in matters of family life," *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982). Although they did not rule on the rights of a spouse and a child, we find that the general requirements of section 1983 are stringent enough to exclude even their close family rights. The alleged intentionality of the tort-feasors, that their ineptitude created conditions that encouraged the murder of Mr.

Orta–Fernández, lacks the directness necessary to stretch section 1983 to even close family members. However, Mr. Orta–Fernández' daughter and heir-at-law, Nora Angeli Orta–Velázquez, whose interests are represented by her mother, Ms. Velázquez–Martínez, has stated that she is suing based on her inheritance of the right to this action for her father's pain and suffering while incarcerated at Bayam6n and during his gruesome death. 31 L.P.R.A. § 2677 (1993). *See also Arroyo v. Pla,* 748 F.Supp. 56, 57 (D.P.R.1990). She, along with her mother with *patrias potestas* over her, are the only plaintiffs who may maintain plaintiff/decedent's action.

## III.

### Legal Standards

#### A. Summary Judgment Standard

The standard for summary judgment is straightforward and well-established: A district court should grant a summary judgment motion "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby. Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986), and "genuine", "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of establishing the nonexistence of a "genuine" issue as to a material fact is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 331, 106 S.Ct. 2548, 2556–57, 91 L.Ed.2d 265 (1986).

This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and, (2) an ultimate burden of persuasion, which always remains on the moving party. *Id.* Although the ultimate burden of persuasion remains on the moving party, the nonmoving party will not defeat a

properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties;" the requirement is that there be a genuine issue of material fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10. Under Rule 56(e) of the Federal Rules of Civil Procedure, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Anderson,* 477 U.S. at 256, 106 S.Ct. at 2514. Summary judgment exists to "pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." *Wynne v. Tufts Univ. Sch. of Medicine,* 976 F.2d 791, 794 (1st Cir.1992).

## B. *42 U.S.C. § 1983 Liability Standard*

In order to establish liability under section 1983, plaintiffs must first show that "[t]he conduct complained of was committed by a person acting under color of state law." *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). *See also Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 559 (1st Cir.1989); *Voutour v. Vitale,* 761 F.2d 812, 819 (1st Cir.1985), *cert. denied, Saugus v. Voutour,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986).

Second, plaintiffs must show that the defendants' conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt,* 451 U.S. at 535, 101 S.Ct. at 1912–13; *Gutierrez–Rodriguez,* 882 F.2d at 559. This second prong of the inquiry has two elements. The first element requires that there was, in fact, a deprivation of rights, privileges or immunities secured by the Constitution or laws of the United States. *Voutour,* 761 F.2d at 819. The second element requires plaintiffs to show that the defendants' conduct caused this deprivation. *Id.* at 819. This second-element inquiry has three parts. First, plaintiffs must establish for each codefendant that his or her own act

or omission deprived the victim of protected rights. *Monell v. Department of Social Services,* 436 U.S. 658, 694 n. 58, 98 S.Ct. 2018, 2037 n. 58, 56 L.Ed.2d 611 (1978) (citing *Rizzo v. Goode,* 423 U.S. 362, 370–71, 96 S.Ct. 598, 603–04, 46 L.Ed.2d 561 (1976)); *Gutierrez–Rodriguez,* 882 F.2d at 562; *Figueroa v. Aponte–Roque,* 864 F.2d 947, 953 (1st Cir. 1989). Second, the defendants' conduct or inaction must have been intentional, *Simmons v. Dickhaut,* 804 F.2d 182, 185 (1st Cir.1986), grossly negligent, or must have "amounted to a reckless or callous indifference to the constitutional rights of others." *Gutierrez–Rodriguez,* 882 F.2d at 562. The final element in proving causation requires "an 'affirmative link' between the street-level misconduct and the action, or inaction, of supervisory officials." *Gutierrez–Rodriguez,* 882 F.2d at 562 (quoting *Rizzo,* 423 U.S. at 371, 96 S.Ct. at 604).

## C. *Deliberate Indifference Standard*

██ Where, as plaintiffs allege here, prison living conditions are at question, the standard applicable is the deliberate indifference standard, most recently and clearly enunciated by the Supreme Court in *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Although the Constitution "does not mandate comfortable prisons, neither does it permit inhumane ones." *Id.* at 832, 114 S.Ct. at 1976. The Eighth Amendment requires prison officials to provide humane conditions of confinement and to "take reasonable measures to guarantee the safety of the inmates." *Id.* The safety of prisoners is a crucial right: "[B]eing violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Id.* at 834, 114 S.Ct. at 1977.

██ That said, not every injury suffered translates into constitutional liability for prison officials. *Id.* at 837–38, 114 S.Ct. at 1979. Prison officials may be found liable only when there has been an objective, serious deprivation, and that that deprivation results from official deliberate indifference to the health and safety of an inmate. *Id.* To satisfy this standard, it is enough that a prison official "acted or failed to act despite his

knowledge of a substantial risk of serious harm." *Id.* at 842, 114 S.Ct. at 1981. In this sense, the deliberate indifference standard reflects the section 1983 standard, requiring both deprivation and intent. Here, however, that intent is nuanced to fit the Eighth Amendment's requirements. *See also* Sarah Botz and Robert C. Sherer, *Substantive Rights Retained By Prisoners*, 84 Geo. L.J. 1466, 1479 (1996).

## IV.

### *Analysis*

#### A. *Defendant Colón*

■ Defendant Joseph Colón began his service as Corrections Administrator seven days before the killing of Mr. Veldázquez–Orta. In *Cortes Quinones v. Jimenez Nettleship*, 773 F.2d 10, 14 (1st Cir.1985), the First Circuit found that a defendant who had been on sick leave for two months prior to and during the death of plaintiff's relative was entitled to summary judgment, while five-month-long employment before the death deprived defendants of such a benefit. In the instant case, defendant Colón had begun working at the Bayamón facility a mere seven days prior to the killing. Although a week is not insignificant, it is closer to two months' absence than five months' presence. Plaintiffs argue that Mr. Colón's experience that qualified him to work at the Bayamón prison would necessarily make him aware and, thus, responsible, for the problems in his new assignment immediately. However, that Mr. Colón had so little experience in this particular prison lifts liability from him for the consequences of the prison conditions that were almost entirely created in his absence. We, therefore, grant summary judgment as to Mr. Colón.

#### B. *Defendants John Doe and Richard Roe*

■ We dismiss the case with regard to John Doe and Richard Roe. There has been no service of summons against these defendants within the time required by Fed. R.Civ.P. 4(j). The First Circuit has held that the purpose of Rule 4(j) is "to compel parties and their counsel to be diligent in prosecuting causes of action." *United States v. Ayer,* 857 F.2d 881, 884 (1st Cir.1988). Although the fictitious defendants cannot move for dismissal, the court has the power to dismiss *sua sponte.* In this case, the Complaint was filed on September 25, 1995, over eighteen months ago, and plaintiffs have not substituted the fictitious defendants to be able to serve summons. Under the circumstances, dismissal *sua sponte is* appropriate.

#### C. *Defendant Ricardo Soto–Torres*

■ We will now analyze this case as against Mr. Soto–Torres. First, Mr. Soto–Torres had been working for several years as the Commandant of Custody Officers at Bayamón 1072, where Angel Enrique Orta–Fernández was killed. There is no allegation by plaintiffs that Mr. Soto–Torres was alerted to a specific danger regarding the deceased. However, plaintiffs provide specific allegations about the prison conditions at the Bayamón prison. They cite the shockingly high number of inmate killings, the lack of functioning locks on the cells, a dearth of guards so low that the prisoners were basically unguarded, a contrastingly high level of gang control, as well as widespread corruption among the few guards present.

■ Defendant Soto–Torres does not challenge many of these allegations, notably the lack of locks and the dearth of guards. Rather, he asserts that their knowledge of these problems and their inaction does not constitute deliberate indifference. Defendants also proffer the perverse argument that because the prison was under court orders from the *Morales Feliciano* case, Civil No. 79–04,[1] issued two weeks prior to Mr.

---

1. See the following published opinions for the *Morales Feliciano* litigation: *Hernandez Colon v. Morales Feliciano,* 498 U.S. 879, 111 S.Ct. 212, 112 L.Ed.2d 172 (1990); 494 U.S. 1046, 110 S.Ct. 1511, 108 L.Ed.2d 646 (1990); *Morales–Feliciano v. Parole Board of the Commonwealth,* 887 F.2d 1 (1st Cir.1989); *Morales Feliciano v. Hernandez Colon,* 775 F.Supp. 487 (D.P.R.1991); 775 F.Supp. 477 (D.P.R.1991); 771 F.Supp. 11 (D.P.R.1991); 757 F.Supp. 139 (D.P.R.1991); 754 F.Supp. 942 (D.P.R.1991); 704 F.Supp. 16 (D.P.R.1988); 697 F.Supp. 51 (D.P.R.1988); 697 F.Supp. 37 (D.P.R.1988); 672 F.Supp. 627 (D.P.R.1987); 697 F.Supp. 26 (D.P.R.1987); 697 F.Supp. 51 (D.P.R.1988); *Morales Feliciano v.*

Orta–Fernández' murder, no prison official could take corrective measures, either in general or with regard to the particular problem of an absence of functioning locks on the cell doors. Defendant cites improvements in prison security, including the fact that seven inmates have been convicted of the murder of Mr. Orta–Fernández. A positive sign for prisoners' rights this is, but it is also of no relevance here. Instead, we must ascertain whether, before the murder, Mr. Soto–Torres knew of a danger to the prisoners' safety and ignored it, under the deliberate indifference and section 1983 standards.

Not only does the evidence demonstrate that he did know of a danger and ignored it, but his defense papers openly admit both the knowledge and the inaction regarding two crucial aspects of the prisoners' safety: Locks and surveillance. Plaintiffs, therefore, present an unquestionably *prima facie* section 1983 case of an Eighth Amendment violation: That the murder of Mr. Orta–Fernández was caused by the defendant's inaction regarding the admitted lack of security. The specificity of the alleged inaction distinguishes the instant case from *Pinto v. Nettleship*, 737 F.2d 130, 132 (1st Cir.1984), another inmate murder case in the Bayamón prison, in which the district court's awarding of summary judgment was upheld because of plaintiffs' failure to detail what steps defendants may have taken to remedy the situation. Here, the nonfunctioning locks and the sparsely-guarded wards were specific security elements that Soto–Torres could have improved.

Defendant was ill-advised to rely on *Cortes Quinones v. Jimenez Nettleship*, 773 F.2d 10, which indeed holds many close comparisons to the instant case. There, a mother and her husband sued the prison officials for the death of their son at the hands of other inmates. Defendants' affidavits in that case admitted the difficult conditions in the Arecibo prison, and claimed they did their best in the circumstances. *Id.* at 14. However, "[t]hat defendants had to work within budgetary limitations does not, on the present record, necessarily indicate they were powerless to deal with the 'state of war' alleged by

plaintiffs and denied by defendants." *Id.* at 15. Here, defendant's claim of incapacity due to the *Morales Feliciano* order equally lacks dispositivity.

Indeed, in another case, *Crisoptimo v. Nettleship*, 800 F.2d 11 (1st Cir.1986), the First Circuit reversed the granting of summary judgment in part because the defendants relied on similar reasoning as appeared in *Cortes Quinones* and in the instant case: That they were incapable of changing an admittedly chaotic prison to protect defendant, about whose particular danger they knew nothing. *Cortes Quinones*, 773 F.2d at 11–14. The First Circuit here reiterated its reply in *Cortes Quinones*, that "knowledge of a particular threat to a particular inmate—in contrast to knowledge that prison conditions constitute a threat to inmates generally, is [not] a prerequisite to liability for the death of an inmate." *Crisoptimo*, 800 F.2d at 13; *Cortes Quinones*, 773 F.2d at 15.

The instant case is not distinct from either *Cortes Quinones* or *Crisoptimo* in the plaintiffs' allegations and the defendants' response. The First Circuit continued in *Cortes Quinones:* "[I]t may turn out that defendants did what they could within the limitations they faced. We do not foreclose that possibility. The only point we make now is that defendants' perfunctory nine or ten sentence affidavits were insufficient conclusively [ ] to establish and hence summary judgment for defendants was not warranted on the basis of the affidavits they filed." *Cortes Quinones* 773 F.2d at 14. Again, we find little to distinguish the defendants' affidavits from those in the *Cortes Quinones* case; although they are lengthier, they fail to prove in any way that their performance was optimal within the circumstances. Rather, they admit that they did not take remedies, allegedly because of the *Morales Feliciano* court order. There can be no clearer set of material facts for a jury to determine: *The!* potential connection between the defendants' action or inaction and the killing of Mr. Orta–Fernández, and the issue of whether defendants' inaction was the result of objective material conditions or their own will.

*Romero Barcelo,* 672 F.Supp. 591 (D.P.R.1986); 497 F.Supp. 14 (D.P.R.1979).

## V.

### *Conclusion*

We, therefore, **DENY** defendant Soto–Torres' motion for summary judgment; **GRANT** defendant Joseph Colón's motion for summary judgment, and **DISMISS** the case as to plaintiffs Myriam Fernández de Jesús, Irma Orta–Fernández, and Dinorah Velázquez Martinez, except in her capacity as mother with *patriae potestas* over the remaining plaintiff, Nora Angeli Orta–Velázquez. We also **DISMISS** the case as against John Doe and Richard Roe. Judgment shall be entered accordingly.

This Order disposes of *Docket Document Nos. 18, 20, 22, 29, 32, and 33.*

**IT IS SO ORDERED.**