3. Granting such other and further relief as this Court may deem appropriate.

> Robert W. Meserve and
> Benjamin H. Lacy,
> as Trustees of the Property of
> BOSTON and MAINE
> CORPORATION, DEBTOR
>
> By: _Benjamin H. Lacy_
>         /One of the Trustees/

DATED: January 30, 1980

**Ramon Rondon PINTO, et al.,
Plaintiffs, Appellants,**

v.

**Carlos Jimenez NETTLESHIP, etc., et
al., Defendants, Appellees.**

No. 83–1875.

United States Court of Appeals,
First Circuit.

Argued April 5, 1984.

Decided June 21, 1984.

David Rive-Rivera, Hato Rey, P.R., with whom Calderon, Rosa-Silva & Vargas, Hato Rey, P.R., was on brief, for appellants.

Gerardo Mariani, Asst. Sol. Gen., and Howard Charles, Atty., San Juan, P.R., with whom Miguel Pagan, Deputy Sol. Gen., was on brief, for appellees.

Before CAMPBELL, Chief Judge, COFFIN, Circuit Judge, and BONSAL,* Senior District Judge.

LEVIN H. CAMPBELL, Chief Judge.

This is an appeal from the district court's grant of summary judgment in favor of defendant Victor Maldonado in a damages action brought under 42 U.S.C. § 1983. Plaintiffs are the parents of Ramon Rondon Carmona, who was killed in Bayamon Regional Jail in Puerto Rico. The decedent, a pretrial detainee, was killed by an unknown inmate on December 12, 1981, the second day of his detention. Plaintiffs brought this action on October 26, 1982, against Carlos Jimenez Nettleship, Director of Prisons of the Administration of Correction of the Commonwealth of Puerto Rico, and appellee Victor Maldonado, the Superintendent of the Bayamon Regional Jail. The relief they sought was compensation for their son's death.

In the complaint, plaintiffs alleged, in part, as follows:

7. At said penal institution there was an extreme condition of overcrowding, lack of vigilance and protection of inmates due to lack of sufficient prison guards.

8. Defendant, Victor Maldonado, as Superintendent of the Bayamon Regional Jail, was physically incapable of providing protection to the life of any inmate in his institution.

9. The decedent's death and the plaintiffs' consequential damages were caused by the denial of adequate protection to decedent, by the imposition of cruel and unusual punishment, and by the failure of the defendants and each of them to guarantee plaintiffs' decedent his constitutional rights and physical protection to which he was entitled.

10. The acts of the defendants and each of them herein, do not constitute an isolated incident, but are part of a concerted pattern of action by the defendants and all of them, in failing to guarantee the prisoners in custody of the Administration of Correction of the Commonwealth of Puerto Rico their constitutional rights and their physical protection.

The district court dismissed without prejudice the complaint against Carlos Jimenez Nettleship for failure to have made timely service upon him. See Fed.R.Civ.P. 4(j). That ruling has not been appealed. The other defendant, Victor Maldonado, moved for summary judgment, contending the plaintiffs had not indicated any personal acts in which he had engaged that violated the decedent's constitutional rights. Maldonado also claimed qualified immunity. After an exchange of interrogatories and answers, and after the taking of Maldonado's deposition, plaintiffs filed an opposition to the motion for summary judgment. On October 13, 1983, the district court granted summary judgment on the ground that plaintiffs had failed to raise a genuine issue of material fact regarding Maldonado's personal responsibility for the decedent's death and because plaintiffs' allegations of administrative negligence failed to state a claim under section 1983.

When reviewing a summary judgment, we will uphold the district court if, taking the record in the light most favorable to the non-moving party, there is no genuine

---

* Of the Southern District of New York, sitting by designation.

issue of fact and the moving party is entitled to judgment as a matter of law. *Santoni v. Federal Deposit Insurance Corp.,* 677 F.2d 174, 177 (1st Cir.1982). We conclude the district court was correct in granting summary judgment for defendant Maldonado.

■■ The complaint alleges that Maldonado violated the decedent's eighth amendment right to be free from cruel and unusual punishment. Since there is no *respondeat superior* liability under section 1983, *Kostka v. Hogg,* 560 F.2d 37, 40 (1st Cir.1977), liability in damages can only be imposed upon officials who were involved personally in the deprivation of constitutional rights. *Triplett v. Azordegan,* 570 F.2d 819, 823 (8th Cir.1978); *Duchesne v. Sugarman,* 566 F.2d 817, 830 (2d Cir.1977); *Vinnedge v. Gibbs,* 550 F.2d 926, 928 (4th Cir.1977). The requisite personal involvement of a prison official may be established by showing that the official knew of a prisoner's personal danger yet failed to provide protection:

> When a supervisory official is placed on actual notice of a prisoner's need for physical protection or medical care, "administrative negligence can rise to the level of deliberate indifference to or reckless disregard for that prisoner's safety."

*Layne v. Vinzant,* 657 F.2d 468, 471 (1st Cir.1981) (quoting *West v. Rowe,* 448 F.Supp. 58, 60 (N.D.Ill.1978)). *See Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). In conjunction with his motion for summary judgment, defendant Maldonado filed an affidavit expressly denying having personal knowledge that the decedent had any special need for protection. Plaintiffs did not by counteraffidavit or otherwise thereafter point to

"specific facts" contesting this point. *See* Fed.R.Civ.P. 56(e).

Rather, plaintiffs rely now upon the argument that the "extreme condition of overcrowding, lack of vigilance and protection of inmates due to lack of sufficient prison guards" resulted in decedent's death. Maldonado, in answering plaintiffs' interrogatories, admitted that the jail was designed for 650 prisoners, but was actually housing 1,285 prisoners in December 1981. The trouble with this theory of liability is that all the record materials suggest that the numbers of prisoners and guards were beyond the control of Maldonado. Indeed, plaintiffs themselves allege in the complaint that Maldonado "was physically incapable of providing protection to the life of any inmate in his institution." It is undisputed that the number of guards was controlled by the Puerto Rico Corrections Administration, not Maldonado. Maldonado asserts that he did his best to obtain more guards, pointing to letters in the record in which he repeatedly requested additional guards from the Corrections Administration during 1980–81. Maldonado also lacked authority to control the prisoner population by refusing to accept prisoners sent to the jail. *See* P.R.Laws Ann. tit. 33, §§ 4365, 4366 (1980). As evidence of his efforts to do what he could, he introduced detailed records of prisoners transferred to other institutions during 1981 to relieve the overcrowding at Bayamon Jail. Plaintiffs offered nothing to suggest that Maldonado could have done more.[1] We note, in addition, that a year before decedent's murder, the United States District Court for the District of Puerto Rico found comprehensively that the entire Puerto Rico prison system violated the eighth

---

1. To be sure, plaintiffs have argued, for the first time on appeal, that Maldonado could have transferred pretrial detainees out of Bayamon or should have segregated them from other prisoners. This point was never presented below, and is therefore inappropriately raised before us. *Johnston v. Holiday Inns, Inc.,* 595 F.2d 890, 894 (1st Cir.1979). Moreover, the district court held in 1980 that the entire prison system in Puerto Rico was overcrowded, *Morales-Feliciano v. Romero-Barcelo,* 497 F.Supp. 14, 32 (D.P.R.

1979), indicating that it was at least highly questionable if there were other institutions to which Maldonado, on his own authority, could have transferred all detainees. *Some* showing that Maldonado might have had the authority and the means to have effected such arrangements was a necessary predicate to this argument. A further difficulty is the absence of any evidence that the decedent was not the victim of another pretrial detainee.

amendment, being overcrowded to the point that adequate supervision of inmates was very difficult. *Morales-Feliciano v. Romero-Barcelo*, 497 F.Supp. 14, 32 (D.P.R.1979). Where such conditions may be endemic to an entire system, it is difficult to say that overcrowding in a single institution demonstrates, without more, the personal culpability of a local administrator.

The district court correctly concluded that personal liability in damages under section 1983 cannot be based on prison conditions beyond the control of a defendant. In *Kish v. County of Milwaukee*, 441 F.2d 901 (7th Cir.1971), inmates at the Milwaukee County Jail sought damages from the jail's supervisor for physical and homosexual assaults by fellow inmates. The plaintiffs argued that the defendant, Sheriff Purtell, could have avoided the assaults by assigning only one prisoner per cell. The court rejected the argument:

> The jail was designed to accommodate 360 prisoners and had a total inmate population of as many as 420 prisoners during the time in question. The result of ordering one man to a cell would necessarily have been the release of inmates in violation of the Sheriff's statutory responsibilities. Such action would have subjected the Sheriff to liability for criminal contempt, as would refusal to accept custody of prisoners. To suggest that Purtell should have followed either course of action is as frivolous as the suggestion made by appellant at trial that Purtell should have resigned in protest.

*Id.* at 904–05 (footnotes omitted). Insofar as plaintiffs' damages claim against Maldonado rests on allegations of conditions beyond his personal control, it fails to make out grounds for recovery.

Thus, while "administrative negligence can rise to the level of deliberate indifference," *Layne v. Vinzant*, 657 F.2d at 471, plaintiffs have failed to indicate any personal action or inaction by defendant Maldonado within the scope of his responsibilities that would make him personally answerable in damages under section 1983.

Despite ample time for discovery, plaintiffs were unable to call to the court's attention any specific facts regarding defendant's conduct that create a genuine issue for trial. Plaintiffs have done little more than rest on the inadequate allegations of their pleadings, contrary to the requirements of Fed.R.Civ.P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Since courts faced with claimed violations of prisoners' constitutional rights have been cautious not to grant summary judgment if there is a reasonable basis for finding a triable issue, *see Slay v. Alabama*, 636 F.2d 1045 (5th Cir.1981); *Curtis v. Everette*, 489 F.2d 516 (3d Cir.1973), *cert. denied*, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974), we have taken pains to search the record for a genuine issue for trial. But we have found none. We therefore affirm the district court's grant of summary judgment in favor of defendant Maldonado.

In affirming the grant of summary judgment against the warden, we do not condone the overcrowded conditions admitted to exist in this case and graphically described by the district court in *Morales-Feliciano v. Romero-Barcelo*, 497 F.Supp. 14, 32 (1979), and elsewhere. Insofar as these deplorable conditions still continue and become the subject of other litigation, we encourage the district court to do what it properly can to ameliorate them and to provide remedies for those who suffer under them.

*Affirmed.*