**Carlos Muriel ARROYO, et al., Plaintiffs,**

v.

**Myrta PLA, et al., Defendants.**

**Civ. No. 88–361 HL.**

United States District Court, D. Puerto Rico.

Oct. 16, 1990.

Jorge Ortiz Brunet, John E. Mudd, Hato Rey, P.R., for plaintiffs.

Jose R. Garcia Perez, Federal Litigation Div., Dept. of Justice, San Juan, P.R., for defendants.

## OPINION AND ORDER

LAFFITTE, District Judge.

In this action the Court must determine whether the Secretary of Education, the Director of School Security Corp., the high school teacher and the acting principal of the República de Colombia School are liable under 42 U.S.C. Section 1983 for the tragic accidental death of Eddie Muriel Román, who was shot in a classroom by a fellow classmate. While we sympathize with the plaintiffs for the unfortunate loss of Eddie Muriel Román, we hold that plaintiffs have failed to state a cause of action under the United States Constitution.

Plaintiffs, the parents and fourteen siblings of Eddie Muriel Román ("Eddie"), brought this civil rights action for compensatory and punitive damages for their personal suffering as well as for Eddie's suffering, as heirs to his estate. Plaintiffs allege that defendants have a duty to provide adequate security to protect students from unreasonable injury while attending school and that they have a duty to render first aid or medical assistance to students. Plaintiffs aver that defendants knew or should have known of the school's discipline and drug problems. In particular, they should have known that weapons were being carried by students to schools. Consequently, plaintiffs claim that defendants should have instituted random periodic searches of students' lockers, bundles and bags. Defendants also should have assigned medical personnel to public schools. Defendants' failure to provide adequate protection of school children caused the death of Eddie Muriel Román in violation of his Fourteenth Amendment rights.

Defendants move for judgment on the pleadings on the ground that the plaintiffs do not have a cause of action in their own right for the loss of Eddie's companionship.[1] We agree.

---

1. Defendants also claim that although the complaint states that decedent's parent inherit the

The First Circuit does not recognize a parent's or sibling's right to maintain a Section 1983 action for loss of familial association except when the government action in issue is directly aimed at the relationship between the parent and young child (i.e., adoption or foster care). *Cortez–Quiñones v. Jimenez–Nettleship,* 842 F.2d 556, 563 (1st Cir.1988), *cert. denied,* 488 U.S. 823, 109 S.Ct. 68, 102 L.Ed.2d 45 (1988). *See also Valdivieso Ortiz v. Burgos,* 807 F.2d 6 (1st Cir.1986) (the stepfather and brother did not have a constitutionally protected interest in the companionship of their adult son and brother who was allegedly beaten to death by a penal guard while he was an inmate at a detention center); *Jones v. Rhode Island,* 724 F.Supp. 25 (D.R.I.1989) (parents did not state a claim under Section 1983 based on a First Amendment right to continued family association); *de la Cruz LaChapel v. Chevere Ortiz,* 637 F.Supp. 43 (D.P.R.1986) (a sibling's interest was not protected by the Constitution). Clearly, in this case the government did not interfere with the private family decisions of the Muriel Román family, nor did the state intend to change their relationship. Although we find that plaintiffs cannot bring a cause of action in their personal capacity for damages they sustained from Eddie's death, Eddie's parents, not the decedent's siblings, can nevertheless bring an action on behalf of the son's suffering in their representative capacity as legal heirs to his cause of action.

Defendants also move for summary judgment on the ground that plaintiffs Carlos Muriel Arroyo and Juanita Román Contreras, the parents of the decedent, have failed to state a cause of action on behalf of the decedent.

On a motion for summary judgment, the Court must consider the record in the light most favorable to the party opposing the motion. Summary judgment will be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ None of the parties dispute that on October 26, 1987, Eddie Muriel Román, a fifteen year old student of the República de Colombia School, was shot by José Ramón Rodríguez Cabrera ("Jose Ramón"), a friend and fellow classmate. At approximately 12:30 P.M., after Eddie and the other students settled into their seats, a gunshot was heard in the classroom of codefendant Josefina Sánchez ("Sánchez"), the teacher of the Entrepreneur Development class. Seconds later, Eddie stood up, stated that he was wounded, and walked towards the front of the room and collapsed. Sánchez ordered some students to take Eddie to the office and told the remaining students to leave the classroom. She then proceeded, with the help of other students, to check the student's belongings that had been left behind in the classroom. At that point, José came forward and admitted he accidentally shot Eddie. José stated that he had found the revolver while walking near the school, placed it inside the pocket of his blue bag, and took it to school. When he tried to remove the revolver in the Entrepreneur Development classroom, the revolver fired and struck Eddie who was sitting nearby.

■ Plaintiffs allege that defendants deprived the decedent of his Fourteenth Amendment right not to be deprived of his life without due process of law. However, the due process clause of the Fourteenth Amendment states that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." The Supreme Court in *DeShaney v. Winne-*

---

cause of action of the decedent for the alleged civil rights violation, no mention is made in the complaint that the decedent's parents are suing in their representative capacity on behalf of the decedent. Although defendants are correct in pointing out this minor technical detail, the complaint will not be dismissed because reasonable inferences can be drawn that they are suing in their representative capacity as well as in

their personal capacity. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957) (a complaint should not be dismissed for failure to state a claim unless it appears beyond a doubt that a litigant is unable to prove any set of facts which would entitle the litigant to a remedy). A civil rights case can be brought by an estate or a representative of an alleged injured party.

bago County Dept. of Social Services, 489 U.S. 189, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989) stated that the Fourteenth Amendment protects against deprivation of life without due process of law committed by *state actors* but does not protect against deprivation of life committed by *private actors*. The state has no affirmative constitutional duty to protect citizens from other citizens. Nor will the state's failure to provide protection against private violence constitute a due process violation. *Id.* 109 at 1004. *See also Estate of Gilmore v. Buckley,* 787 F.2d 714 (1st Cir. 1986), *cert. denied,* 479 U.S. 882, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986); *Ellsworth v. City of Racine,* 774 F.2d 182 (7th Cir.1985), *cert. denied,* 475 U.S. 1047, 106 S.Ct. 1265, 89 L.Ed.2d 574 (1986); *Beck v. Calvillo,* 671 F.Supp. 1555 (D.Kan.1987); *Dudosh v. City of Allentown,* 665 F.Supp. 381 (E.D. Pa.1987), *cert. denied,* 488 U.S. 942, 109 S.Ct. 367, 102 L.Ed.2d 356 (1988).

Yet, in certain special circumstances, when the State has placed a person into its custody, the state's failure to protect that person may constitute a constitutional violation. *DeShaney,* 109 S.Ct. at 1005. For example, the state has an affirmative duty of care and protection to prisoners, *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Ayala Serrano v. Cruz Lebron,* 909 F.2d 8 (1st Cir.1970); to involuntarily committed mental patients, *Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982), and to children in the custody of state social services, *DeShaney,* 109 S.Ct. 998, *Doe v. New York City Department of Social Services,* 709 F.2d 782 (2d Cir.1983), *cert. denied sub nom., Catholic Home Bureau v. Doe,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

In *Estate of Gilmore, supra,* a woman was murdered by an inmate on furlough from prison. Her estate brought a civil rights action against the county sheriff, county commissioners, the superintendent of jail, and the medical director and two psychiatrists of the state hospital. The First Circuit found that the state has no duty under the Fourteenth Amendment to protect its citizens against the violence of others. The court pointed out that the result would have been different if the situation was that a state official killed the victim. The circuit reasoned that:

> [t]he fourteenth amendment ... does not protect against the deprivation of life *by any person at all,* but only against the deprivation of life *by the state* without due process. (citation omitted). Where, as in these circumstances, the victim dies at the hands of a private individual who was neither an agent of the state nor employed by the state, can it be said that *the state* deprived her of life without due process? If not, there was no violation of the fourteenth amendment, even though the failure of state officials to protect the victim contributed to her death.

*Id.* at 719. (emphasis in the original).

Although the court found that no duty existed, the court nevertheless determined whether special circumstances existed to hold that the state had an affirmative duty to protect. The court concluded that although some of the state defendants knew or should have known of the special danger the inmate posed to the woman, and the inmate was legally in state custody while on furlough, the state did not play a role in the inmate's plan to kill her. *Id.* at 721–22.

In *Ellsworth,* 774 F.2d at 183, the police department had provided the wife of an undercover narcotics officer a bodyguard to protect her from underworld figures who threatened to kill the undercover narcotics officer and his family. The undercover narcotics officer's wife brought a civil rights action to recover for damages she sustained from a masked man that attacked her after her bodyguard left for the day. The Seventh Circuit stated that the city had assumed a limited special relationship with the law enforcement's wife during the period when the bodyguard was on duty. However, the court noted that the city was not the actor who had harmed her, but an unknown assailant. *See also Dudosh,* 665 F.Supp. 381 (the city and the police officers were not liable for a due process violation to the administrator of an estate of a woman who had been fatally

shot by a man although they knew of his prior hostilities toward the decedent).

In the case at bar, we find that under the present circumstances the Secretary of Education and its officials cannot be found liable for constitutional violations. Although young children are required by law to attend school and it may be said that these children are under the custody of the state while they attend classes, the determining factor in this case is that the death of Eddie was caused solely by a private individual. 18 L.P.R.A. § 80 (mandatory school attendance of children between the ages of eight and fourteen years). *See Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 723 (3rd Cir.1989), *cert. denied sub nom., Smith v. Stoneking*, —— U.S. ——, 110 S.Ct. 840, 107 L.Ed.2d 835 (1990) (school children who are compelled to attend school and are physically mistreated by school employees may state a cause of action under Section 1983). The state did not intend the death of Eddie nor did it participate in the accidental killing. Here, José Ramón found the revolver in a field near the school. While in class, he accidentally fired and killed Eddie. Although he may have been under the school care, he engaged in private conduct. He cannot possibly be considered an agent of the state, nor can we accept plaintiff's argument that defendants encouraged José Ramón to carry a lethal weapon to school. He did not purposefully obtain a gun and bring it to school for reasons of self-protection.

■ Plaintiffs claim that the laws of Puerto Rico impose a duty on the Secretary of Education, Corps of School Security, public school teachers and principals to provide efficient protection and security of students attending public schools. Puerto Rico Law No. 26 of June 5, 1985, 18 L.P.R.A. Section 141 *et seq.* Under the local law, the Secretary of Education has the obligation to assign members of the Corps of School Security to those schools which have a high rate of vandalism and criminality. 18 L.P.R.A. Section 141c. Plaintiffs argue that the Secretary of Education should have instituted a system of periodic random searches of public school students' lockers, bundles and bags. By failing to institute adequate security measures, defendants tacitly approved and encouraged misconduct such as allowing students to carry weapons to school. Plaintiffs point to various newspaper articles reporting two previous shooting incidents on school premises where students have been accidentally shot by students carrying weapons to schools. Plaintiffs contend defendants' failure to adequately protect students caused the death of Eddie.

However, in light of *DeShaney*, 109 S.Ct. at 1007, the Court cannot rely on state laws that impose on state agents an affirmative duty of protection as the premise for federal constitutional liability when the injury is caused by a private third person. *See also Stoneking*, 882 F.2d at 723; *Estate of Gilmore*, 787 F.2d at 719–20. *See, e.g., Lach v. Robb*, 679 F.Supp. 508, 512 (W.D.Pa. 1988), *aff'd. without opinion*, 857 F.2d 1464 (3rd Cir.1988) (although Pennsylvania law imposes duty on police to make a reasonable effort to rescue a person in peril this state law duty does not create a constitutional right). We also note from the documents submitted by the parties that a guard was assigned to the República de Colombia School. As to plaintiffs' contention that public school students should be conducted to periodic, random searches, said measures would be contrary to the Supreme Court decision in *New Jersey v. T.L.O.*, 469 U.S. 325, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985), which held that school officials could only search a student when there were reasonable grounds for suspecting that the student had violated the law or school rules.

As to plaintiffs' claim that the school lacked medical personnel, we find that there is no merit to this contention. Although the school lacked medical personnel, the autopsy report revealed that first aid or emergency room medical procedure would not have saved Eddie's life because the bullet entered his heart.

As stated earlier, the state's failure to provide adequate protection does not necessarily violate the due process clause of the

Constitution. Although the defendants may have known of other shooting incidents or violent acts that had taken place on school premises, the injury here was caused by a third person and not by a school official. *Estate of Gilmore*, 787 F.2d. at 721. If this were the case where a teacher had physically injured or mistreated a student then the Constitution would be implicated. *See, e.g., Stoneking*, 882 F.2d at 723 (the school band director had sexually abused a student).

> ... [T]here is no constitutional right to be protected by the state against being murdered by criminals or madmen. It is monstrous if the state fails to protect its residents against such predators but it does not violate the due process clause of the Fourteenth Amendment or, we suppose, any other provision of the Constitution. The Constitution is a charter of negative liberties; it tells the state to let people alone; it does not require the federal government or the state to provide services, even so elementary a service as maintaining law and order.

*Bowers v. DeVito*, 686 F.2d 616, 618 (7th Cir.1982).

This Court is deeply moved by the tragedy of the Muriel–Román family. It is horrific that criminality, violence, and vandalism are taking place in Puerto Rico public schools, and it is shocking that school children are carrying weapons to school. Regrettably, we cannot provide relief to the Muriel–Román family under the United States Constitution.

WHEREFORE, the motion for summary judgment is hereby GRANTED and the case is dismissed for failure to state a cause of action.

IT IS SO ORDERED.