**Iris Yolanda MEDINA PEREZ et als., Plaintiff(s),**

v.

**Victor FAJARDO et als., Defendant(s).**

**Civil No. 01–1143 (JAG).**

United States District Court, D. Puerto Rico.

March 31, 2003.

Ricardo Ruiz–Diaz, Gloria L. Lebron–Nieves, Ruiz & Reyes Law Offices, Fajardo, PR, Ramon L. Walker–Merino, San Juan, PR, for Plaintiffs.

Salvador J. Antonetti–Stutts, Director, Francisco L. Acevedo–Nogueras, Grisselle Gonzalez–Negron, Faccio & Pabon Roca, Marta E. Vila–Baez, Sanchez Betances & Sifre, P.S.C., Francisco A. Ojeda–Diez, San Juan, PR, for Defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Plaintiff Iris Yolanda Medina Perez ("Medina") brought suit on her own behalf and as legal custodian of her minor daughter GMM ("GMM")(collectively "plaintiffs") against police officer Ramon Ayala Toste ("Ayala"), Police Superintendent Pedro Toledo ("Toledo"), school director Esther Orabona Ocasio ("Orabona"), and Education Secretary Victor Fajardo ("Fa-

jardo")(collectively "defendants") pursuant to Title IX of the Education Amendment Act of 1972, 20 U.S.C. § 1681 ("Title IX") and 42 U.S.C.A. § 1983 (" § 1983"). Plaintiffs allege that Ayala, who worked at GMM's school, sexually abused her. Pending before the Court is Toledo's unopposed motion to dismiss (Docket No. 30) and Orabona's motion for judgment on the pleadings (Docket No. 31 & 38) which Fajardo has joined (Docket No.37 & 49). Plaintiffs opposed the motion for judgment on the pleadings (Docket No. 39) and defendants filed a reply (Docket No. 43).

## FACTUAL BACKGROUND

On January 2000, Toledo assigned Ayala to render services at the Rivera Bultron School in Carolina, Puerto Rico, pursuant to the "Public School Free From Drugs and Arms" program. Ayala was approximately 20 years old. GMM was a 14 year old eighth grade student at the school. On January 31, 2003 Ayala allegedly offered GMM a lift home in his new Mitsubishi Eclipse. Once GMM had accepted and was inside the car, Ayala took her to an isolated area known as "Paseo Tablado" in Villa Carolina, where he made unwanted sexual advances toward her, including kissing and fondling intimate parts of her body, notwithstanding her resistance and rejection. Ayala allegedly intimidated GMM by bolstering his physical force and public authority and by flashing and displaying his gun. On February 3, Ayala again coerced GMM into his vehicle and submitted her to unwanted sexual advances, aggressive fondling, sexual assault and intended rape. Plaintiffs submit that Orabona was aware of Ayala's behavior but nevertheless failed to protect GMM. Moreover, they contend Ayala's conduct towards GMM was part of a pattern of sexual abuse and harassment of female students at the school.

Plaintiffs contend that co-defendants Toledo, Fajardo and Orabona were negligent in failing to properly, select, train, instruct and supervise Ayala. Furthermore, they allege co-defendant Orabona had constructive knowledge of such incidents and nonetheless failed to investigate or take corrective measure regarding Ayala's actions. In conclusion, plaintiffs allege defendants created a sexually hostile environment which deprived GMM of her constitutional rights.

## DISCUSSION

### I. Motion to Dismiss Standard

Pursuant to Fed.R.Civ.P. 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. See Brown v. Hot, Sexy and Safer Prods., Inc., 68 F.3d 525, 530 (1st Cir.1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in favor of plaintiff. See Correa–Martinez v. Arrillaga–Belendez, 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." McCoy v. Massachusetts Institute of Tech., 950 F.2d 13, 22 (1st Cir.1991). Plaintiff is responsible for putting his best foot forward in an effort to present a legal theory that will support his claim. Id. at 23 (citing Correa–Martinez, 903 F.2d at 52). Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir.1988).

## II. Judgment on the Pleadings Standard

Motions under Fed. R.Civ P. 12(c) "should be evaluated under the familiar standard applicable to a Rule 12(b)(6) motion to dismiss." *Fotos v. Internet Commerce Express, Inc.*, 154 F.Supp 2d 212, 213 (D.N.H.2001); *Canty v. Old Rochester Regional School District*, 54 F.Supp 2d 66, 68 (D.Mass.1999). The Court's inquiry is limited and should focus not on whether the plaintiff will ultimately prevail but rather whether he should be entitled to offer evidence to support a claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). A motion for judgment on the pleadings should only be granted if "it clearly appears according to the facts alleged, that the plaintiff cannot recover on any viable theory." *Garita Hotel Ltd. Partnership v. Ponce Fed. Bank*, 958 F.2d 15, 17 (1st Cir.1992); *see also Brown*, 68 F.3d at 530.

Because the arguments set forth in the motion to dismiss and for judgment on the pleadings and their respective standards of review are similar, the Court will analyze them simultaneously. Defendants make several arguments in support of their motions: (1) that the claims against the defendants in their official capacity are barred by the Eleventh Amendment; (2) that the claims should be dismissed because Title IX does not provide for the imposition of individual liability; (3) that plaintiffs have failed to state a claim under § 1983; (4) that defendants are not liable under a theory of supervisory liability; and (5) that Medina's claims should be dismissed because she lacks standing to assert a § 1983 claim. In their opposition, plaintiffs assert that: (1) state officials are liable for damages in their personal capacity; (2) the defendants have the requisite personal involvement necessary to state a § 1983 claim; (3) defendants are not entitled to qualified immunity as supervisors because their inaction amounts to deliberate indifference; and (4) plaintiff Medina's claims are anchored on this Court's supplemental jurisdiction.

## III. Liability under Title IX

■ Defendants argue that they are immune from suit under Title IX because it only allows suits against the educational institution or federal funding recipient and not its individual officials. The First Circuit has clearly foreclosed holding individuals liable under Title IX in their personal capacities. *Liu v. Striuli*, 36 F.Supp.2d 452 (D.R.I.1999)(*citing Lipsett v. University of Puerto Rico*, 864 F.2d 881, 901 (1st Cir.1988)); *see also Doe v. School Administrative Dist. No. 19*, 66 F.Supp 2d 57, 62 (D.Me.1999). Most other federal circuits have also found that there is no individual liability for sexual harassment in an educational setting. *Id.* at (*citing Smith v. Metropolitan Sch. Dist.*, 128 F.3d 1014, 1018–20(7th Cir.1997) (collecting cases)).

Consequently, because plaintiffs have not sued the Department of Education or the Rivera Bultron School, but only the individual officers at these institutions, their Title IX claims against the defendants are dismissed.

## IV. Eleventh Amendment Immunity

■ The Eleventh Amendment bars suits against states for money damages unless the state has consented. *See Metcalf & Eddy v. P.R. Aqueduct & Sewer Authority*, 991 F.2d 935, 938 (1st Cir.1993); *In re San Juan Dupont Plaza Hotel Fire Lit.*, 888 F.2d 940, 942 (1st Cir.1989); *Ramirez v. P.R. Fire Serv.*, 715 F.2d 694, 697 (1st Cir.1983).[1] Eleventh Amendment Im-

---

1. The Eleventh Amendment provides that:

"the judicial power of the United States shall

munity extends to arms or "alter egos" of the State. *Fresenius Medical Care Cardiovascular Resources, Inc. v. Puerto Rico and Caribbean Cardiovascular Center Corp.*, 322 F.3d 56 (1st Cir.2003); *Bernier–Aponte*, 196 F.Supp.2d at 98–99. Similarly, suits filed against state officials in their official capacity are deemed actions against the state, regardless if the state is a named party to the suit, since the real party in interest is the State and not the official. *Hafer v. Melo*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Even when state officials act under color of state law pursuant to § 1983, the Eleventh Amendment bars monetary claims against them in their official capacity. *Id.* at 98–99; *see also Kostka v. Hogg*, 560 F.2d 37 (1st Cir.1977). "Although state officials are literally persons, a suit against a state official in his official capacity is not a suit against the official, but rather a suit against the official's office." *Bernier–Aponte*, 196 F.Supp.2d at 98. However, "the fact that an official acts under color of law does not mean the he or she becomes the state—when sued in his or her individual capacity—he or she is a person for the purpose of § 1983 and enjoys no Eleventh Amendment immunity." *Torres v. U.S.*, 24 F.Supp 2d 181 (D.P.R.1998). Therefore, officials acting under color of state law may nonetheless be liable for damages in their personal capacity.

Inasmuch as Toledo, Orabona and Fajardo are state officials and any judgment rendered against them in their official capacities would be paid from public coffers, the Eleventh Amendment precludes the claims against them in their official capaci-ty. Remaining, are the § 1983 claims against the defendants in their personal capacities.

## V. Standing to sue under § 1983

 Defendants also argue that only GMM and not her mother, Medina, may bring suit pursuant to § 1983. The First Circuit has stated that actions under § 1983 are personal in the sense that the plaintiff must have himself suffered the alleged deprivation of constitutional or federal rights. *Caraballo Cordero v. Banco Financiero De Puerto Rico*, 91 F.Supp.2d 484, 488 (D.P.R.2000); *Rodriguez–Oquendo v. Toledo Davila*, 39 F.Supp 2d 127, 131 (D.Puerto Rico 1999); *Judge v. City of Lowell*, 160 F.3d 67, 76 n. 15 (1st Cir.1998). "The vindication of third party rights is generally not recognized under 42 U.S.C.A. § 1983." *Caraballo Cordero*, 91 F.Supp.2d at 488 (*citing Quiles ex rel. Proj. Head Start v. Hernandez Colon*, 682 F.Supp. 127, 129 (D.P.R.1988)). A person may not sue or recover for the deprivation of the civil rights of another. *Quiles*, 682 F.Supp. at 129. "Family members do not have an independent claim under § 1983 unless the constitutionally defective conduct or omission was directed at the family relationship." *Rodriguez–Oquendo*, 39 F.Supp.2d at 131 (*citing Torres*, 24 F.Supp 2d at 183); *Cortes–Quinones v. Jimenez–Nettleship*, 842 F.2d 556, 563 (1st Cir. 1988). Because GMM was the one who suffered a constitutional deprivation and her sexual abuse at the hands of Ayala was a wrong directed against her person, rather than her family relationships, Medina can only bring suit on behalf of GMM and not on her own behalf. Accordingly, Medi-

---

not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or subjects of any Foreign State." U.S. Const. amend XI. Puer-

to Rico is considered a state for Eleventh Amendment purposes. *Bernier–Aponte v. Izquierdo–Encarnacion*, 196 F.Supp.2d 93, 98 (D.P.R.2002)(*citing Negron Gaztambide v. Hernandez Torres*, 145 F.3d 410 (1st Cir.1998)).

na's claims on her own behalf are dismissed. *See generally Rivera v. Medina,* 963 F.Supp. 78, 83–84 (D.P.R.1997)

## VI. § 1983 Liability

██ To establish a claim under § 1983, the plaintiffs must demonstrate that:(1) defendants were acting under color of state law; (2) that they were in fact deprived of a federally protected right, and; (3) that defendants were personally involved in the violation, *Caraballo Cordero,* 91 F.Supp.2d at 489; *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 559 (1st Cir.1989). In this case, plaintiffs have stated a valid § 1983 claim against Ayala. He was a police officer, acting under color of state law, and by sexually molesting GMM, he violated her substantive due process right to bodily integrity.[2] His personal involvement in the depravation is not in dispute. *See Adorno Colon v. Toledo Davila,* 137 F.Supp.2d 39, 42 (D.P.R.2001)(*citing Seekamp v. Michaud,* 109 F.3d 802 (1st Cir. 1997))("A predicate act to supervisory liability is that the subordinate must have committed a constitutional violation"). The personal involvement of Toledo, Orabona and Fajardo in the depravation of GMM's rights, however, is not as clear. While it is not contested that these defendants were acting under color of state law, the remaining elements of the § 1983 claims against them must be analyzed in light of the specific allegations made against each.

### A. Police Superintendent Pedro Toledo

In their complaint, plaintiffs allege that Toledo is liable because as Police Superintendent he employed, recruited, trained, supervised and assigned Ayala to serve on school premises. They suggest that Toledo was negligent in failing to properly evaluate, select, train, instruct and supervise Ayala such that he should respond for Ayala's conduct. (Docket No. 1, ¶ 6, 20)

██ Nonetheless, it is clear that there is no *respondeat superior* liability under section § 1983. *Maldonado Denis v. Castillo Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994) (*citing Monell v. Dep't of Social Servs.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978)); *Caraballo Cordero,* 91 F.Supp.2d at 489; *Pinto v. Nettleship,* 737 F.2d 130, 132 (1st Cir.1984). Notwithstanding, plaintiff may hold Toledo accountable for his own acts or omissions under a theory of supervisory liability. *Caraballo Cordero,* 91 F.Supp.2d at 489; *Pinto,* 737 F.2d at 132.

██ To find a supervisor liable under § 1983, a plaintiff must show that: (1) that the supervisor's acts or omissions deprived the plaintiff of a constitutionally protected right, (2) that his action or inaction amounted to a reckless disregard or callous indifference to the constitutional rights of others, (3) that there was an affirmative link between the street level misconduct and the action or inaction of the supervisory official. *Caraballo Cordero,* 91 F.Supp.2d at 490; *Adorno Colon,* 137 F.Supp.2d at 42; *Gutierrez–Rodri-*

---

**2.** *See generally Armstrong v. Lamy,* 938 F.Supp. 1018, 1031 (D.Mass.1996) (assuming without deciding that students have a clearly established constitutional right to be free from sexual abuse by school teachers and discussing cases in the Fifth and Third Circuits which have held that such a constitutional right exists); *See also Doe v. Taylor Independent School Dist.,* 15 F.3d 443, 445 (5th Cir.1994); *Stoneking v. Bradford Area School Dist.,* 882 F.2d 720, 727 (3rd Cir. 1989); *School Liability for Student Suicides,* Eugene C. Bjorklun, West's Education Law Reporter, March 1996, 106 Ed. Law Rep. 21. Because, although not a school official, Ayala was a state official specifically assigned to GMM's school, the Court finds GMM had a constitutional right to bodily integrity and to be free from sexual abuse.

*guez,* 882 F.2d at 562. To demonstrate deliberate indifference, a plaintiff must show (1) a grave risk of harm; (2) the defendant's actual or constructive knowledge of that risk; and (3) his failure to take easily available measures to address the risk. *Camilo–Robles v. Hoyos,* 151 F.3d 1, 7 (1st Cir.1998) (*citing Manarite v. City of Springfield,* 957 F.2d 953, 956 (1st Cir.1992)); *Febus–Rodriguez,* 14 F.3d at 91(Noting that mere negligence is insufficient for a finding of supervisory liability). For example, a supervisor may be found liable for "formulating a policy, or engaging in a custom, that leads to the challenged occurrence," *Maldonado–Denis,* 23 F.3d at 583, or for placing an improperly selected or trained subordinate in a position where he could cause harm. *Pinto* at 132 (*citing Layne v. Vinzant,* 657 F.2d 468, 471 (1st Cir.1981)); *see also Caraballo Cordero,* 91 F.Supp.2d at 490.

■ There must be a causal connection however, between the supervisor's conduct and the subordinate's unconstitutional conduct. *Maldonado–Denis,* 23 F.3d at 582. A causal link may be found when the supervisor knows of, or tacitly approves of the conduct, or when he has actual or constructive notice of the ongoing violations but fails to take corrective measures such as better training and oversight. *Id.* For example, if a subordinate has a known history of widespread abuse, sufficient to alert a supervisor to his conduct, the supervisor could be liable for his actions. *Id.; see also Rodriques v. Furtado,* 950 F.2d 805, 813 (1st Cir.1991). "A key factor in determining whether a supervisor is liable is what knowledge the supervisor had regarding the subordinate's behavior" *Adorno Colon,* 137 F.Supp.2d at 42 (*Febus–Rodriguez v. Betancourt–Lebron,* 14 F.3d 87, 93 (1st Cir.1994)); *Camilo–Robles,* 151 F.3d at 7.

■ A liberal reading of the complaint reveals that as Police Superintendent of the Commonwealth of Puerto Rico, Toledo was responsible for hiring, supervising and assigning Ayala to render services at the school. Toledo's negligence in failing to properly evaluate, train, instruct, supervise and issue clear directives for Ayala to follow in performing his functions could result in deliberate indifference if Toledo knew or had reason to know that Ayala was prone to such behavior. For example, Ayala's record could reveal a pattern of aggressive behavior or sexual misconduct sufficient to put Toledo on notice that he was not the appropriate official to assign to the school. Plaintiff is entitled to discover and present evidence suggesting that Toledo exhibited deliberate indifference or reckless disregard in selecting, training or supervising Ayala and that as such he should be liable for his own acts or omissions with respect to the violation of GMM's rights.

At the motion to dismiss stage, this is all that is necessary. Plaintiff is entitled to go forward with her claims against Toledo. After discovery, the Court will be in a better position to assess the causal connection between Ayala's conduct and Toledo's supervisory liability or his claim of qualified immunity.[3] Consequently, Toledo's motion to dismiss is DENIED.

**3.** "Qualified immunity is an affirmative defense shielding public officials from civil damages so long as their conduct does not violate any clearly established statutory or constitutional right of which a reasonable person would be aware." *Rodriguez–Oquendo,* 39 F.Supp 2d at 133; *DiMarco–Zappa v. Cabanil-* *las,* 238 F.3d 25, 35 (1st Cir.2001). This involves a two part inquiry: (1) whether the constitutional right in question was clearly established at the time of the violation, and (2) whether a reasonable similarly situated official would understand that the challenged conduct violated that established constitution-

## B. School Director Orabona

Plaintiffs allege that as Director of the Rivera Bultron Public School, Orabona was flagrantly negligent in failing to instruct, supervise or take proper action regarding Ayala's functions at the school and his relationship with the student and staff, on or off school premises. They argue Orabona had an affirmative duty to protect the students at the school because she had actual or constructive knowledge of Ayala's behavior and the incidents surrounding his sexual transgressions with GMM. Furthermore, the complaint alleges that Orabona's failure to protect GMM by conducting an investigation or instituting corrective measures, was paramount to a condonation of Ayala's behavior and the creation of a danger she had an affirmative duty to eliminate. (Docket No. 1, ¶ 5, 8,12, 21, 22, 23)

Although a liberal reading of the complaint allows the inference that Orabona may have had supervisory responsibility over Ayala, and may thus be liable under a theory of supervisory liability, the § 1983 claim against Orabona could also be premised on her own constitutional deprivation of GMM's rights by failing to adequately protect her despite having knowledge of Ayala's conduct.

■■■ The Supreme Court has held that a state's failure to protect an individual against private violence, as opposed to state action, does not constitute a violation of the substantive Due Process Clause unless the victim is in a special relationship with the state and the state has custody over the latter. *DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 201–02, 109 S.Ct. 998, 1003, 1005, 103 L.Ed.2d 249(1989); *Arroyo v. Pla*, 748 F.Supp. 56, 59–60 (D.P.R.1990) (*citing Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 723 (3rd Cir.1989)("state laws imposing an affirmative duty of protection on state agents cannot be the premise for federal constitutional liability when the injury is caused by a private third person")). While the Court has determined that the state has an affirmative duty of care and protection to prisoners, involuntary committed mental patients and children in the custody of state social services, it is unclear that public schools owe an affirmative duty to their students from harm by private actors. *Arroyo*, 748 F.Supp. at 60 (collecting cases). Many circuits have held, however, that compulsory school attendance is insufficient to impose on public school officials an affirmative duty to protect students from harm by third parties. *Willhauck v. Town Of Mansfield*, 164 F.Supp.2d 127, 133 (D.Mass.2001)("because parents still maintain primary responsibility for the child, compulsory school attendance does not create the sort of special relationship that would trigger heightened protection under the due process clause"). Nonetheless, the First Circuit has expressed its reluctance to follow its sister circuits in holding, without qualification, that public schools owe their students no constitutional duty to protect. *Willhauck*,

al right. *Rodriguez–Oquendo*, 39 F.Supp.2d at 133. Because qualified immunity is an affirmative defense, the burden of proof is on the defendant. *DiMarco–Zappa*, 238 F.3d at 35.

The defendant must show that the subordinate's actions violated a clearly established constitutional right and that it was clearly established that a supervisor would be liable for constitutional violations perpetrated by his subordinates in that context. *Camilo–Robles*,

151 F.3d 1, 6 (1st Cir.1998). The question, thus, reduces itself to objective legal reasonableness and the relationship between the supervisors acts or omissions and the subordinates conduct. *Camilo–Robles*, 151 F.3d at 6.

The Court declines to evaluate the reasonableness of finding Toledo liable for his acts or omission respecting Ayala's conduct, absent information on the degree of Toledo's knowledge, if any, about Ayala's behavior.

164 F.Supp.2d at 133 (stating that such a cramped application of the special relationship doctrine has been the object of harsh criticism and collecting cases to that effect). A public school, by virtue of the custodial relationship between school officials and students created by compulsory attendance laws, may owe students a limited duty to protect when the conduct is so extreme as to shock the conscience, *Willhauck*, 164 F.Supp.2d at 134(*citing Hasenfus v. LaJeunesse*, 175 F.3d 68, 72 (1st Cir.1999)).

A liberal reading of the complaint suggests that Orabona was apprised of Ayala's conduct and nevertheless failed to protect her, thereby permitting the conduct to continue and intensify, while exposing other girls at the school to similar acts of sexual aggression by Ayala. Reading the facts in a light most favorable to plaintiff, co-defendant Orabona could have been aware of a specific threat or danger imminently posed to GMM, such that she breached her constitutional duty to protect GMM. Thus, Orabona's 1983 liability need not hinge on her unclear supervisory liability over Ayala, but rather on her own constitutional deprivation of GMM's rights, if she in fact had knowledge of Ayala's conduct. *See Willhauck*, 164 F.Supp.2d at 134.

■ Because GMM's school attendance is mandatory pursuant to 19 L.P.R.A. § 80 (mandatory school attendance for children between the ages of eight and fourteen years); *see also Arroyo*, 748 F.Supp at 60. The Court finds that the public school and its officials owed GMM a constitutional duty, albeit a limited one, to protect her from harm. Regardless of whether Ayala is considered a private or public actor, depending on his relationship to school officials, Orabona's alleged knowledge of the incidents and her enduring failure to protect GMM and prevent such conduct could present "pungent facts", allowing the imposition of § 1983 liability over Orabona. Because Ayala was specifically assigned to GMM's school and because the nature of his relationship with school officials like Orabona remains unclear, the Court is unwilling to dismiss plaintiffs claims against Orabona at this early stage of the litigation. Even if Orabona lacked a direct supervisory role over Ayala, the extent and degree of her knowledge regarding his unlawful behavior toward the students assigned to her care, could still subject her to liability under § 1983 for her own failure to protect GMM. "School personnel who exhibit deliberate indifference by failing to take appropriate action when they have knowledge that the abuse is occurring can be held liable under § 1983." Eugene C. Bjorklun, *School Liability For Student Suicides*, West's Education Law Reporter, March 1996. Because the complaint sufficiently pleads that Orabona had notice of Ayala's behavior and because at this stage it is unclear whether her inaction amounts to deliberate indifference, the Court denies Orabona's Motion for judgment on the pleadings.

## C. Secretary of Education Victor Fajardo

■ The only specific allegation as to Fajardo is that he was Secretary of Education at the time of the incidents. Plaintiff has not pleaded with sufficient particularity Fajardo's supervisory involvement in the depravation of GMM's rights. His position as Secretary of Education, in and of itself, is insufficient to establish supervisory liability when unsupported by factual allegations. Accordingly, Fajardo's motion for judgment on the pleadings is granted and all claims against him are dismissed. *See Caraballo–Cordero*, 91 F.Supp.2d at 490.

## CONCLUSION

For the foregoing reasons, the Court dismisses all claims against co-defendant Fajardo. As to co-defendants Orabona and Toledo, the Court dismisses the Title IX claims and § 1983 claims against them in their official capacity. Additionally, the Court dismisses the claims by co-plaintiff Medina on her own behalf. Remaining are Medina's § 1983 claims on behalf of GMM against Orabona and Toledo in their personal capacities.

Accordingly, Fajardo's motion for judgment on the pleadings is GRANTED. Toledo's motion to dismiss (Docket No.30) and Orabona's motion for judgment on the pleadings (Docket No. 31) are GRANTED in part and DENIED in part.

IT IS SO ORDERED.